IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALISON O'DONNELL | ) | CASE NO. |
| 18977 Rivers Edge Drive | ) | |
| Chagrin Falls, Ohio 44023 | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE: |
| | ) | |
| vs. | ) | **COMPLAINT FOR INJUNCTIVE** |
| | ) | **RELIEF AND DAMAGES** |
| UNIVERSITY HOSPITALS HEALTH | ) | |
| SYSTEM | ) | (Jury Demand Endorsed Herein) |
| 3605 Warrensville Center Road, MSC 9110 | ) | |
| Shaker Heights, Ohio 44122 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| NAVEEN ULI | ) | |
| c/o University Hospitals Rainbow Babies | ) | |
| and Children's Hospital | ) | |
| 11100 Euclid Avenue | ) | |
| Cleveland, Ohio 44106 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| SUMANA NARASIMHAN | ) | |
| c/o Cleveland Clinic Center for Pediatric | ) | |
| Endocrinology | ) | |
| Cleveland Clinic Main Campus | ) | |
| Mail Code A120 | ) | |
| 9500 Euclid Avenue | ) | |
| Cleveland, Ohio 44195 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| ROSE GUBITOSI-KLUG | ) | |
| c/o University Hospitals Rainbow Babies | ) | |
| and Children's Hospital | ) | |
| 11100 Euclid Avenue | ) | |
| Cleveland, Ohio 44106 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| | ) | |



```
WILLIAM REBELLO                        )
c/o University Hospitals Rainbow Babies  )
and Children's Hospital                )
11100 Euclid Avenue                    )
Cleveland, Ohio 44106                  )
                                       )
                   Defendants.         )
```

Plaintiff Alison O'Donnell, by and through undersigned counsel, as her Complaint against

Defendants, states and avers the following:

## PARTIES & VENUE

1. O'Donnell is a former employee of University Hospitals Health System ("U.H.").

2. U.H. is a major medical complex headquartered in Cleveland, Ohio.

3. U.H. is an employer, pursuant to 42 U.S.C. § 12111.

4. U.H. is an employer, pursuant to Ohio Rev. Code § 4112.

5. Naveen Uli is and, at all times material herein, was a U.H. employee.

6. At all times referenced herein, Uli was acting in the course and scope of his employment at U.H.

7. At all times referenced herein, Uli was employed in a supervisory capacity over O'Donnell.

8. At all times material herein, Uli was an employer pursuant to Ohio Rev. Code § 4112.

9. Sumana Narasimhan is a former U.H. employee.

10. At all times referenced herein, Narasimhan was acting in the course and scope of her employment at U.H.

11. At all times referenced herein, Narasimhan was employed in a supervisory capacity over O'Donnell.

12. At all times material herein, Narasimhan was an employer pursuant to Ohio Rev. Code § 4112.

The Employee's Attorney.™



13. Rose Gubitosi-Klug is and, at all times material herein, was a U.H. employee.

14. At all times referenced herein, Gubitosi-Klug was acting in the course and scope of her employment at U.H.

15. At all times referenced herein, Gubitosi-Klug was employed in a supervisory capacity over O'Donnell.

16. At all times material herein, Gubitosi-Klug was an employer pursuant to Ohio Rev. Code § 4112.

17. William Rebello is and, at all times material herein, was a U.H. employee

18. At all times referenced herein, Rebello was acting in the course and scope of his employment at U.H.

19. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that O'Donnell is alleging Federal Law Claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.* and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

20. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

21. Within 300 days of the conduct alleged below, O'Donnell filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), specifically, Charge No. 532-2013-01079.

22. On July 15, 2016, O'Donnell received a Right to Sue letter, dismissing Charge No. 532-2013-01079, in accordance with 42 U.S.C. 2000e-5(f)(1).

23. O'Donnell has properly exhausted her administrative remedies.

24. O'Donnell files this Complaint within 90 days of receiving her Right to Sue letter from the EEOC.

The Employee's Attorney.™



25. All material events alleged in this Complaint occurred in Cuyahoga and Asthabula Counties.

26. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, because it is the district court for the district, division, and counties within which a substantial part of the events giving rise to the claims alleged in this Complaint occurred.

27. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## **FACTS**

28. O'Donnell is a physician.

29. U.H. offers a three-year fellowship program in Pediatric Endocrinology ("Fellowship Program" or "Fellowship").

30. On or about June 1, 2010, O'Donnell entered the Fellowship Program.

31. O'Donnell is African American.

32. During O'Donnell's time as a Pediatric Endocrinology Fellow, she was the only African American in the Fellowship Program.

33. O'Donnell suffers and, at all time material herein, suffered from Generalized Anxiety Disorder ("Anxiety").

34. O'Donnell's Anxiety is related to, and presents symptoms of, Social Anxiety Disorder ("Social Phobia").

35. As a result of her Anxiety and Social Phobia, O'Donnell tends to excessively worry about meeting new people.

36. As a result of her Anxiety and Social Phobia, O'Donnell tends to excessively worry about being observed.



37. As a result of her Anxiety and Social Phobia, O'Donnell tends to excessively worry about performing in front of others.

38. As a result of her Anxiety and Social Phobia, O'Donnell tends to have excessive and unreasonable fear of social situations.

39. As a result of her Anxiety and Social Phobia, O'Donnell tends to excessively worry about being judged or criticized by others.

40. Unmitigated and unaccommodated, O'Donnell's Anxiety and Social Phobia can trigger debilitating panic attacks.

41. O'Donnell's Anxiety and Social Phobia are mental and/or physical impairments that significantly limit one or more of O'Donnell's major life activities.

42. O'Donnell is and, at all times material herein, was disabled for the purposes of the ADA.

43. O'Donnell is and, at all times material herein, was disabled for the purposes of Ohio Rev. Code § 4112.

44. Notwithstanding her Anxiety and Social Phobia, at all times material herein, O'Donnell was fully able to perform the duties of a Pediatric Endocrinology Fellow.

45. Uli is a physician in U.H.'s Pediatric Endocrinology department.

46. Uli is the Director of the Fellowship Program.

47. Uli is not African American.

48. Gubitosi-Klug is a Pediatric Endocrinologist.

49. At all times material herein, Gubitosi-Klug was a physician in the Pediatric Endocrinology Department.

50. At all times material herein, Gubitosi-Klug was one of O'Donnell's supervisors in the Fellowship Program.

The Employee's Attorney.™



51. Gubitosi-Klug is not African American.

52. Narasimhan is a Pediatric Endocrinologist.

53. At all times material herein, Narasimhan was one of O'Donnell's supervisors in the Fellowship Program.

54. Narasimhan is not African American.

55. At all times material herein, Rebello was the Graduate Medical Education coordinator at U.H.

56. Rebello is not African American.

57. Throughout O'Donnell's time in the Fellowship Program, O'Donnell was treated differently than other, non-disabled, Fellows.

58. Throughout O'Donnell's time in the Fellowship Program, O'Donnell was treated differently than other, non-African American, Fellows.

59. In or around July of 2010, Uli neglected to provide O'Donnell with an orientation to the Fellowship Program.

60. Other, non-African Americans, Fellows were provided an orientation.

61. In or around August of 2010, Gubitosi-Klug refused to assist O'Donnell during O'Donnell's first week of hospital coverage.

62. Other, non-African American, Fellows were provided assistance during their first week of hospital coverage.

63. In or around October of 2010, Uli required O'Donnell to cover another Fellow's clinic because the other Fellow was absent.

64. Other, non-African American Fellows were not required to cover the clinics of others when those others were absent.

65. In or around November of 2010, O'Donnell disclosed her Anxiety and Social Phobia to Uli.

The Employee's Attorney.™



66. In or around November of 2010, O'Donnell disclosed her Anxiety and Social Phobia to U.H.

67. In or around November of 2010, Uli described the hair of persons of African descent as "wild and unruly."

68. In or around November of 2010, Narasimhan demanded that O'Donnell see one of Narasimhan's patients.

69. Other, non-African American, Fellows were not asked to see other physician's patients.

70. Other, non-disabled, Fellows were not asked to see other physician's patients.

71. Beginning in July of 2010, and throughout the duration of her Fellowship, O'Donnell was not given advance notice her clinic schedule.

72. Defendants routinely gave O'Donnell her clinic schedule with less than 24 hours' notice.

73. Other, non-African American, Fellows were given notice of their clinic schedule a minimum of one month in advance.

74. Other, non-disabled, Fellows were given notice of their clinic schedule a minimum of one month in advance.

75. In or around November of 2010, O'Donnell complained to Uli about the disparate treatment that O'Donnell was experiencing at U.H.

76. In or around November of 2010, O'Donnell complained to U.H. about the disparate treatment that O'Donnell was experiencing at U.H.

77. Beginning in the fall of 2010, and throughout the duration of O'Donnell's Fellowship, Uli routinely held O'Donnell to a higher standard than other, non-African American, Fellows.

78. Beginning in the fall of 2010, and throughout the duration of O'Donnell's Fellowship, Uli routinely held O'Donnell to a higher standard than other, non-disabled, Fellows.

The Employee's Attorney.™



79. Beginning in the fall of 2010, and throughout the duration of O'Donnell's Fellowship, Uli, Narasimhan, and Gubitosi-Klug all routinely either ignored or berated O'Donnell when O'Donnell attempted to participate in the Fellowship's weekly Divisional Case Conferences.

80. Other, non-African American, Fellows were neither ignored, nor berated, when they participated in the Fellowship's weekly Divisional Case Conferences.

81. Other, non-disabled, Fellows were neither ignored, nor berated, when they participated in the Fellowship's weekly Divisional Case Conferences.

82. Beginning in July of 2010, and throughout the duration of her Fellowship, Uli frequently accused O'Donnell of not paying attention during weekly Divisional Case Conferences.

83. Other, non-African American, Fellows routinely arrived late for the Conferences and texted throughout the Conferences but were not accused of not paying attention.

84. Other, non-disabled, Fellows routinely arrived late for the Conferences and texted throughout the Conferences but were not accused of not paying attention.

85. Beginning in the fall of 2010, and throughout the duration of O'Donnell's Fellowship, Narasimhan made a habit of referring to O'Donnell by her first name, as opposed to "Dr. Matthews,", which was O'Donnell's last name at the time, in front of patients.

86. Narasimhan did not refer to other, non-African American, Fellows by their first names in front of patients.

87. Narasimhan did not refer to other, non-disabled, Fellows by their first names in front of patients.

88. Beginning in December of 2011, and throughout the duration of O'Donnell's Fellowship, Uli refused to provide O'Donnell with monthly evaluations, despite the fact that the Head of Graduate Medical Education ordered Uli to do so.

The Employee's Attorney.™



89. Uli did not refuse to provide other, non-African American, Fellows with monthly evaluations.

90. Uli did not refuse to provide other, non-disabled, Fellows with monthly evaluations.

91. Beginning in September of 2010, and throughout O'Donnell's fellowship, Uli repeatedly confronted O'Donnell about her clinic notes, alleging that O'Donnell's clinic notes were inadequate.

92. O'Donnell's clinic notes were not inadequate.

93. When O'Donnell asked Uli, and other senior members of the department, to evaluate O'Donnell's notes on an individual basis, only minor changes to improve the notes were suggested.

94. O'Donnell's clinic notes were not insufficient.

95. Beginning in July of 2010, and throughout the duration of her Fellowship, O'Donnell was not allowed to evaluate the faculty at regular intervals, as required by the Accreditation Counsel for Graduate Medical Education.

96. Non-African American Fellows were allowed to evaluate the faculty at regular intervals.

97. Non-disabled Fellows were allowed to evaluate the faculty at regular intervals.

98. In 2012, Uli refused to provide O'Donnell with the first of two evaluations required each year by the Accreditation Counsel for Graduate Medical Education.

99. Uli did not refuse any non-African American Fellows any of their required evaluations.

100.    Uli did not refuse any non-disabled Fellows any of their required evaluations.

101.    In June of 2011, O'Donnell made complaints about discrimination to Uli.

102.    Uli conducted no investigation into O'Donnell's complaints about discrimination.

103.    Throughout her Fellowship, O'Donnell made complaints of discrimination to Uli, Narasimhan, and Gubitosi-Klug.

The Employee's Attorney.™



104.    In or around November of 2011, O'Donnell made a written complaint of discrimination to William Rebello, U.H.'s Graduate Medical Education Coordinator.

105.    In response to O'Donnell's written complaint of discrimination, Rebello laughed at O'Donnell and told O'Donnell, "you can't be serious."

106.    Rebello did not take O'Donnell's complaints seriously.

107.    Rebello did not advocate on behalf of O'Donnell.

108.    Rebello did not investigate O'Donnell's complaints.

109.    By not taking O'Donnell's complaints of discrimination seriously, by not advocating on behalf of O'Donnell, and by not investigating O'Donnell's complaints, Rebello aided and abetted U.H., Uli, Narasimhan, and Gubitosi-Klug in discriminating against O'Donnell.

110.    In or around September of 2011, Uli informed O'Donnell that Uli had the ability to "make things very difficult for your career" if O'Donnell continued to complain about discrimination.

111.    On or about September 28, 2011, O'Donnell made a written complaint about discrimination to the Graduate Medical Evaluation Department.

112.    Following O'Donnell's complaint to the Graduate Medical Evaluation Department, in October of 2011, O'Donnell met with Claudia Hoyen, the Department's Director and Uli.

113.    It was determined in the October 2011 meeting that Uli was to give O'Donnell monthly evaluations, that any concerns Uli had with O'Donnell's performance were to be immediately documented, and that Uli was to evaluate O'Donnell on an objective basis.

114.    Following the October 2011 meeting, Uli refused to abide by any of the agreed upon terms.

115.    In the spring of 2012, O'Donnell again met with the Graduate Medical Evaluation Department to discuss her concerns about discrimination.

The Employee's Attorney.™



116.   As was the case following O'Donnell's October 2011 meeting, following the spring 2012 meeting with Graduate Medical Evaluation Department, UH took no steps to address O'Donnell's concerns and the discrimination continued unabated.

117.   In or around March of 2012, O'Donnell requested a reasonable accommodation for her Anxiety and Social Phobia.

118.   O'Donnell's requested accommodation was that she not be evaluated on unrehearsed public speaking.

119.   On or about June 14, 2012, U.H. mailed O'Donnell a letter refusing her requested accommodation.

120.   In or around June of 2012, after refusing O'Donnell's requested accommodation, U.H. forced O'Donnell onto an involuntary, indefinite leave of absence.

121.   Because U.H. refused to accommodate O'Donnell's disability and because U.H. refused to allow O'Donnell to return to the Fellowship, O'Donnell began seeking other employment.

122.   In or around September of 2012, Ashtabula Pediatrics, a U.H. affiliate, issued a Memorandum of Understanding with O'Donnell regarding a position with that practice.

123.   In or around September of 2012, Ashtabula Pediatrics made O'Donnell an offer of employment.

124.   In or around September of 2012, O'Donnell accepted Ashtabula Pediatrics' offer of employment.

125.   Subsequent to the issuance of the Memorandum of Understanding, O'Donnell inquired of Ashtabula Pediatrics as to why she had not received a final contract.

The Employee's Attorney.™



126.    Ashtabula Pediatrics informed O'Donnell that U.H.'s position was that Ashtabula Pediatrics could not employ O'Donnell until O'Donnell officially resigned from the Fellowship.

127.    In late December of 2016, O'Donnell, in reliance on Ashtabula Pediatrics, formally resigned from the Fellowship.

128.    Subsequent to O'Donnell's resignation from the Fellowship, Ashtabula Pediatrics withdrew its offer of employment.

129.    Ashtabula Pediatrics withdrew its offer of employment at the insistence of U.H.

130.    U.H., Uli, Narasimhan, and Gubitosi-Klug discriminated against O'Donnell on the basis of race.

131.    U.H., Narasimhan, and Gubitosi-Klug discriminated against O'Donnell on the basis of disability.

132.    U.H., Narasimhan, and Gubitosi-Klug retaliated against O'Donnell because of O'Donnell's complaints of discrimination by further discriminating against O'Donnell, by forcing O'Donnell to resign from the fellowship, and by blocking O'Donnell's employment at Ashtabula Pediatrics.

133.    As a result of Defendants' unlawful acts, O'Donnell has suffered, and will continue to suffer, pecuniary harm.

134.    As a result of Defendants' unlawful acts, O'Donnell has suffered, and will continue to suffer, emotional distress and physical harm.

### COUNT I: FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

135.    O'Donnell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

The Employee's Attorney.™



136.    Throughout her Fellowship, O'Donnell was fully competent to perform the duties of her position at U.H.

137.    O'Donnell is and, at all times material herein, was disabled.

138.    O'Donnell repeatedly requested reasonable accommodations from U.H.

139.    U.H. repeatedly refused to engage in an interactive dialog with O'Donnell concerning O'Donnell's requested accommodations.

140.    U.H. repeatedly refused to grant O'Donnell's reasonable accommodations.

141.    U.H.'s refusal to engage in an interactive dialog was in violation of 42 U.S.C. § 12112.

142.    U.H.'s refusal to accommodate O'Donnell's disability was in violation of 42 U.S.C. § 12112.

143.    As a direct and proximate result of U.H.'s unlawful conduct, O'Donnell has suffered and will continue to suffer damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

144.    O'Donnell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

145.    Throughout her employment, O'Donnell was fully competent to perform the duties of her position at the U.H.

146.    O'Donnell is and, at all times material herein, was disabled.

147.    Throughout O'Donnell's Fellowship, U.H. treated O'Donnell less favorably that other, non-disabled, Fellows.

148.    U.H. constructively discharged O'Donnell.

149.    U.H. constructively discharged O'Donnell because of her disability and/or because U.H. regarded O'Donnell as disabled.

The Employee's Attorney.™



150.   U.H.'s constructive discharge of O'Donnell, because of O'Donnell's disability and/or U.H.'s perception of O'Donnell as disabled, was in violation of 42 U.S.C. § 12112.

151.   U'H's disparate treatment of O'Donnell because of O'Donnell's disability and/or U.H.'s perception of O'Donnell as disabled, was in violation of 42 U.S.C. § 12112.

152.   As a direct and proximate result of U.H.'s unlawful conduct, O'Donnell has suffered and will continue to suffer damages.

### COUNT III: RETALIATION BASED ON DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

153.   O'Donnell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

154.   During her employment, O'Donnell made complaints to U.H. regarding U.H.'s ongoing disability discrimination against O'Donnell.

155.   During her employment, O'Donnell made complaints to U.H. regarding U.H.'s ongoing refusal to reasonably accommodate O'Donnell's disability

156.   O'Donnell's complaints regarding disability discrimination and failure to accommodate constituted protected activity under the ADA.

157.   After O'Donnell engaged in protected activity regarding disability discrimination, U.H. retaliated against O'Donnell by constructively discharging her and by blocking her employment at Ashtabula Pediatrics.

158.   U.H.'s retaliation against O'Donnell was in violation of 42 U.S.C. § 12203.

159.   As a direct and proximate result of U.H's retaliatory conduct, O'Donnell suffered and will continue to suffer damages.

The Employee's Attorney.™



## COUNT IV: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

160.    O'Donnell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

161.    Throughout her employment, O'Donnell was fully competent to perform the duties of her position at the U.H.

162.    O'Donnell is and, at all times material herein, was a member of a protected class based on her race.

163.    Throughout O'Donnell's employment, U.H. treated O'Donnell differently than similarly situated others outside of her protected class.

164.    U.H. constructively discharged O'Donnell because of her race.

165.    U.H.'s disparate treatment of O'Donnell, because of her race, violated 42 U.S.C. § 2000e *et seq.*

166.    U.H.'s constructive discharge of O'Donnell, because of her race, violated 42 U.S.C. § 2000e *et seq*.

167.    As a direct and proximate result of U.H.'s unlawful conduct, O'Donnell has suffered and will continue to suffer damages.

## COUNT V: RETALIATION BASED ON RACE DISCRIMINATION IN VIOLATION OF TITLE VII

168.    O'Donnell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

169.    During her employment, O'Donnell made complaints to U.H. regarding U.H.'s ongoing race discrimination against O'Donnell.

170.    O'Donnell's complaints regarding race discrimination constituted protected activity under Title VII.

The Employee's Attorney.™



171.    After O'Donnell engaged in protected activity regarding race discrimination, U.H. retaliated against O'Donnell by constructively discharging her and by blocking her employment at Ashtabula Pediatrics.

172.    U.H.'s retaliation against O'Donnell was in violation of violated 42 U.S.C. § 2000e *et seq.*

173.    As a direct and proximate result of U.H's retaliatory conduct, O'Donnell suffered and will continue to suffer damages.

### COUNT VI: DISABILITY DISCRIMINATION IN VIOLATION OF THE OHIO REV. CODE § 4112

174.    O'Donnell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

175.    Throughout her employment, O'Donnell was fully competent to perform the duties of her position at the U.H.

176.    O'Donnell is and, at all times material herein, was disabled.

177.    Throughout O'Donnell's Fellowship, Uli, Narasimhan, and Gubitosi-Klug treated O'Donnell less favorably that other, non-disabled, Fellows.

178.    Uli, Narasimhan, and Gubitosi-Klug's disparate treatment of O'Donnell because of O'Donnell's disability and/or Uli, Narasimhan, and Gubitosi-Klug's perception of O'Donnell as disabled, was in violation of Ohio Rev. Code § 4112.

179.    As a direct and proximate result of Uli, Narasimhan, and Gubitosi-Klug's unlawful conduct, O'Donnell has suffered and will continue to suffer damages.



## COUNT VII: RETALIATION BASED ON DISABILITY DISCRIMINATION IN VIOLATION OF OHIO REV. CODE § 4112

180. O'Donnell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

181. During her employment, O'Donnell made complaints to U.H. regarding U.H.'s ongoing disability discrimination against O'Donnell.

182. During her employment, O'Donnell made complaints to U.H. regarding U.H.'s ongoing refusal to reasonably accommodate O'Donnell's disability

183. O'Donnell's complaints regarding disability discrimination and failure to accommodate constituted protected activity under Ohio Rev. Code § 4112.

184. After O'Donnell engaged in protected activity regarding disability discrimination, Uli, Narasimhan, and Gubitosi-Klug retaliated against O'Donnell.

185. Uli, Narasimhan, and Gubitosi-Klug's retaliation against O'Donnell was in violation of Ohio Rev. Code § 4112.

186. As a direct and proximate result of Uli, Narasimhan, and Gubitosi-Klug's retaliatory conduct, O'Donnell suffered and will continue to suffer damages.

## COUNT VIII: RACE DISCRIMINATION IN VIOLATION OF OHIO REV. CODE § 4112

187. O'Donnell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

188. Throughout her employment, O'Donnell was fully competent to perform the duties of her position at the U.H.

189. O'Donnell is and, at all times material herein, was a member of a protected class based on her race.

The Employee's Attorney.™



190.    Throughout O'Donnell's employment, Uli, Narasimhan, and Gubitosi-Klug treated O'Donnell differently than similarly situated others outside of her protected class.

191.    Uli, Narasimhan, and Gubitosi-Klug disparate treatment of O'Donnell, because of her race, violated Ohio Rev. Code § 4112.

192.    As a direct and proximate result of Uli, Narasimhan, and Gubitosi-Klug's unlawful conduct, O'Donnell has suffered and will continue to suffer damages.

## COUNT IX: RETALIATION BASED ON RACE DISCRIMINATION IN VIOLATION OF OHIO REV. CODE § 4112

193.    O'Donnell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

194.    During her employment, O'Donnell made complaints to U.H. regarding U.H.'s ongoing race discrimination against O'Donnell.

195.    O'Donnell's complaints regarding race discrimination constituted protected activity under Ohio Rev. Code § 4112.

196.    After O'Donnell engaged in protected activity regarding race discrimination, Uli, Narasimhan, and Gubitosi-Klug retaliated against O'Donnell.

197.    Uli, Narasimhan, and Gubitosi-Klug's retaliation against O'Donnell was in violation of violated Ohio Rev. Code § 4112.

198.    As a direct and proximate result of Uli, Narasimhan, and Gubitosi-Klug's retaliatory conduct, O'Donnell suffered and will continue to suffer damages.

## COUNT X: AIDING AND ABETTING IN VIOLATION OF OHIO REV. CODE § 4112.02 (J)

199.    O'Donnell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

The Employee's Attorney.™



200.    Pursuant to Ohio Rev. Code § 4112.02 (J), it is unlawful for any person to aid or abet unlawful discrimination.

201.    O'Donnell was in a protected class because of her race, pursuant to Ohio Rev. Code § 4112.

202.    O'Donnell was in a protected class because of her disability, pursuant to Ohio Rev. Code § 4112.

203.    In making complaints about race and disability discrimination, O'Donnell engaged in activity protected by Ohio Rev. Code § 4112.

204.    In refusing to take seriously O'Donnell's complaints of discrimination, Rebello aided and abetted discrimination.

205.    In refusing to investigate O'Donnell's complaints of discrimination, Rebello aided and abetted discrimination.

206.    In refusing to advocate on behalf O'Donnell's complaints of discrimination, Rebello aided and abetted discrimination.

207.    As a direct and proximate result of Rebello's unlawful conduct, O'Donnell suffered and will continue to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alison O'Donnell respectfully requests that this Honorable Court grant the following relief:

(a)  Issue a permanent injunction:

    (i)    Requiring Defendants to abolish discrimination, harassment, and retaliation.

    (ii)    Requiring allocation of significant funding and trained staff to implement all changes within two years.

The Employee's Attorney.™



(iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees.

(iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints.

(v)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions.

(b) For an award against each Defendant of compensatory and monetary damages to compensate O'Donnell for back pay, front pay, emotional distress, personal injury, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) For an award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) For an award of reasonable attorney's fees and costs for O'Donnell's claims as allowable under law;

(e) For an award of the taxable costs of this action; and

The Employee's Attorney.™



(f)  For an award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*s/ Peter Mapley*_____
Peter C. Mapley (0092359)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: peter.mapley@spitzlawfirm.com

*Attorney for Plaintiff*

The Employee's Attorney.™



## JURY DEMAND

Plaintiff Alison O'Donnell demands a trial by jury by the maximum number of jurors permitted.

> *s/ Peter C. Mapley*
> Peter C. Mapley (0092359)
> **THE SPITZ LAW FIRM, LLC**

The Employee's Attorney.™

