# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ALISON O'DONNELL | ) | CASE NO.  1:16-CV-2480 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| vs. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS HEALTH | ) | |
| SYSTEM, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Defendants, University Hospitals Cleveland Medical Center (misnamed in the Complaint as University Hospitals Health System) ("UHCMC"), Dr. Naveen Uli ("Uli"), Dr. Sumana Narasimhan ("Narasimhan"), Dr. Rose Gubitosi-Klug ("Gubitosi-Klug"), and William Rebello ("Rebello") (collectively, "Defendants") by and through their undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby respectfully request this Court to grant them summary judgment as to all claims set forth in Plaintiff Alison O'Donnell's ("Plaintiff") Complaint on the grounds that there are no genuine issues of material fact and that Defendants should be granted summary judgment as a matter of law.  A Memorandum in Support and the cited portions of the deposition transcripts of Plaintiff, Uli, Narasimhan, Gubitosi-Klug, Rebello, Julie Chester, Dr. Francoise Adan, and Dr. Paul Minnillo are attached hereto in support of this Motion.

Respectfully submitted,
_/s/ David A. Campbell_
David A. Campbell (0066494)
Liana R. Ho9llingworth (0085185)
**VORYS, SATER, SEYMOUR AND PEASE LLP**
200 Public Square, Suite 1400
Cleveland, OH  44114
Telephone:  216-479-6100
Facsimile:   216-479-6060
Email:     dacampbell@vorys.com
              lrhollingsworth@vorys.com
_Counsel for Defendants_

# TABLE OF CONTENTS

Page

I.      STATEMENT OF ADHERENCE TO LR 7.1 ..............................................................1

II.     SUMMARY OF THE ARGUMENT ..........................................................................1

III.    FACTS .......................................................................................................................2

      A.   The Claims Asserted ........................................................................................2

      B.   The Fellowship Program ..................................................................................2

      C.   Plaintiff's Alleged Disability ...........................................................................4

      D.   Plaintiff's Performance In the Fellowship Program .........................................5

      E.   Plaintiff's 2012 Accommodation Request And Resignation ............................7

      F.   Plaintiff's Complaints During The Fellowship Program ..................................9

IV.     LAW AND ARGUMENT ..........................................................................................10

      A.   Standard of Review ..........................................................................................10

      B.   Plaintiff's Federal Claims Are Time-Barred ...................................................11

      C.   Plaintiff's Disability Claims Fail as a Matter of Law ......................................12

            1.   Plaintiff Sought to Eliminate An Essential Function of Her Position, Therefore, Her Disability Discrimination Claim Fails as a Matter of Law ......................................................................................................12

            2.   Plaintiff Was Not Disabled and Plaintiff's Alleged Disability was Not the "But For" Cause for UHCMC's Decision .................................14

      D.   Plaintiff Cannot Establish Her Claim for Race Discrimination Under Title VII or O.R.C. § 4112 ........................................................................................15

      E.   Retaliation ........................................................................................................18

      F.   Plaintiff Cannot Establish Her Claim That She Was Constructively Discharged .......................................................................................................20

      G.   Aiding and Abetting .........................................................................................22

V.      CONCLUSION ..........................................................................................................23

CERTIFICATE OF SERVICE ...........................................................................................24

iii

I.      **STATEMENT OF ADHERENCE TO LR 7.1**

This Memorandum in Support adheres to the page limitations set forth in Local Rule 7.1 of the United States District Court for the Northern District of Ohio.  The present action has been assigned to the standard case management track.

II.     **SUMMARY OF THE ARGUMENT**

Plaintiff Alison O'Donnell ("Plaintiff") is a practicing pediatrician.  Following her completion of medical school and a residency program, Plaintiff made the decision to apply for the Pediatric Endocrinology Fellowship (the "Fellowship Program") operated by Defendant University Hospitals Case Medical Center ("UHCMC").  Plaintiff was in the Fellowship Program from June 30, 2010 through December 16, 2012.

The Fellowship Program is highly acclaimed and available to only two applicants each year. Seven UHCMC faculty members run the Fellowship Program and ultimately have to certify whether the fellowship candidates meet the uniform standards applied to all Pediatric Endocrinology fellowship programs.  As to Plaintiff, the documented facts verify that the faculty uniformly believed Plaintiff's performance was significantly below Fellowship Program standards. Plaintiff was warned on two occasions and ultimately advised that she had to extend her three-year fellowship by one year in order to be certified as a Pediatric Endocrinology Fellow.  In recognition of her performance issues, Plaintiff agreed to a six-month extension of her program in February of 2012.

Plaintiff never completed the Fellowship Program because in March of 2012 she requested the Fellowship Program to eliminate an essential function of the Fellowship Program due to a social phobia.  UHCMC conducted a good faith accommodation review and ultimately determined that the essential functions of the Fellowship Program could not be eliminated.  Accordingly, Plaintiff was placed on a leave of absence in July of 2012.  Thereafter, on December 16, 2012, Plaintiff

voluntarily resigned from the Fellowship Program in order to accept full-time employment as a pediatrician.

Despite her voluntary resignation, Plaintiff later filed a charge of discrimination and then, nearly four years later, filed this lawsuit.  Plaintiff asserts a variety claims under state and federal law.  However, as set forth below, there are no genuine issues of material fact for trial and summary judgment should be entered in favor of Defendants on all claims asserted.  *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013)

### III.     FACTS

#### A.     The Claims Asserted.

On May 1, 2013, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission.  (Deposition of Plaintiff at Exhibit 8, (hereinafter "Dep. Plaintiff at __").[1] Several years later, Plaintiff filed this lawsuit asserting five claims against UHCMC and four current and former UHCMC employees.  *See* Complaint.  The five claims asserted are disability discrimination, racial discrimination and retaliation.  *See* Complaint.  Plaintiff concedes that she has no direct evidence of discrimination.  (Dep. Plaintiff at 121-122).  Accordingly, this summary judgment is based on the *McDonnell Douglas* circumstantial evidentiary standard.

#### B.     The Fellowship Program.

This lawsuit arises out of Plaintiff's participation in the Fellowship Program from June 30, 2010 through December 16, 2012. (Dep. Plaintiff at 24-25).  Plaintiff graduated from medical school prior to her participation in the Fellowship Program.  (Dep. Plaintiff at 223-224).  Following medical school, Plaintiff completed a three year residency program.  (Dep. Plaintiff at 51).

Upon completion of the residency program, Plaintiff was a practicing physician.  (Dep. Plaintiff at 223-224).  Plaintiff initially accepted employment at an urgent care facility.  (Dep.

---

[1] Cited pages are attached as Exhibit 1.

Plaintiff at 63).  After about a year of employment as a practicing physician, Plaintiff made the voluntary decision to apply to the Fellowship Program.  (Dep. Plaintiff at 223-224).  The Fellowship Program trains physicians for academic-related careers in Endocrinology and Plaintiff concedes that the post-Fellowship Program academic positions "tend to pay a little less" than other non-academic physician occupations.  (Dep. Plaintiff at 58).  In fact, as a fellow, Plaintiff only earned fifty thousand a year in salary despite being a licensed physician.  (Dep. Plaintiff at 68).[2]

Plaintiff concedes that the Fellowship Program must comply with federal standards that are applied to all similar fellowship programs.  (Dep. Plaintiff at 64 and 225).  Plaintiff also concedes that the faculty running the Fellowship Program had to review Plaintiff's performance and certify whether they believed she met these national standards.  (Dep. Plaintiff at 63).  In order to pass the Fellowship Program, Plaintiff concedes that she had to meet the standards of the Fellowship Program.  (Dep. Plaintiff at 64-65 and 226-227).  The expectation of the Fellowship Program is to train qualified candidates and prepare them for successful academic careers.  (Dep. Plaintiff at Ex. 5).

The Fellowship Program is highly limited.  (Dep. Plaintiff at 68-71).  Only two applicants are accepted into the Fellowship Program each year.  (Dep. Plaintiff at 69).  The Fellowship Program is a three year program and, in general, six fellows are in the Fellowship Program at any one time.  (Dep. Plaintiff at 69).  During Plaintiff's tenure in the Fellowship Program, she admits that the fellows in the Fellowship Program had diverse racial backgrounds.  (Dep. Plaintiff at 208).

Seven UHCMC faculty members[3] run the Fellowship Program and are responsible for certifying the fellows as completing the Fellowship Program standards.  (Dep. Plaintiff at 69-71).  Plaintiff admits that the faculty have discretion to determine how the Fellowship Program should

---

[2] It is undisputed that Plaintiff could have earned more as a practicing physician outside of the Fellowship Program. (Dep. Plaintiff at 40-42).
[3] Three of the individual defendants are faculty members who reviewed Plaintiff's performance in the Fellowship Program: Dr. Naveen Uli, Dr. Sumana Narasimhan, and Dr. Rose Gubitosi-Klug.

operate in order to meet the federal standards.  (Dep. Plaintiff at 222).  Plaintiff further concedes that she is unaware of the teaching procedures followed by other fellowship programs outside of UHCMC.  (Dep. Plaintiff at 222-223).

### C.    **Plaintiff's Alleged Disability.**

The disability presented to UHCMC was referred to by Plaintiff's treating physician as "social phobia."  (Dep. Plaintiff at Ex. 6).  Plaintiff describes it as a chronic disorder which impacts her ability to speak in groups, communicate and to think.  (Dep. Plaintiff at 12-13).  Plaintiff admits that her disability would not prevent her from speaking to a large audience or discussing issues in a large group setting.  (Dep. Plaintiff at 14-15).  Moreover, Plaintiff concedes that many people have anxiety related to talking in groups, receiving criticisms and being placed in difficult situations. (Dep. Plaintiff at 43-44).

During the Fellowship Program, Plaintiff was being treated on a regular basis for her social phobia.  (Dep. Plaintiff at 8).  Plaintiff's treating physician conceded that approximately thirty percent of the population report conditions similar to Plaintiff.  (Deposition of Dr. Paul Minnillo at 80 (hereinafter referred to as "Dep. Minnillo at __")).[4]  From June 30, 2010, the date Plaintiff began in the Fellowship Program, until September 6, 2011, Plaintiff visited her physicians for counseling on twenty-one occasions.  (Dep. Minnillo at Ex. 42).[5]  During this time period, Plaintiff never raised the need for any accommodations with her treating physicians.  (Dep. Minnillo at 85-86).  In fact, over this time period, Plaintiff did not report any problems in the Fellowship Program.  (Dep. Minnillo at 86-87 and Ex. 42).  To the contrary, Plaintiff reported on multiple occasions that she was receiving "positive feedback" with respect to her performance and believed she was "doing well at work."  (Dep. Minnillo at 86-87).  Plaintiff's treating physician conceded that if Plaintiff was

---

[4] Cited pages are attached as Exhibit 2.
[5] Dr. Minnillo assumed that Plaintiff ended the sessions in September of 2011 because she was doing better.  (Dep. Minnillo at 72).

having trouble at work, he would have expected the issue to arise during the counseling sessions and the medical records would reflect the discussion.  (Dep. Minnillo at 87-89).

Prior to the Fellowship Program, Plaintiff was able to excel in undergraduate and medical school studies without medical treatment or accommodations.  (Dep. Plaintiff at 44 and 48). Thereafter, Plaintiff completed her three year residency program without any formal accommodations.  (Dep. Plaintiff at 51).  Plaintiff admits that she did not have any performance issues in the residency program despite the lack of accommodations.  (Dep. Plaintiff at 55).

Following the Fellowship Program, Plaintiff has worked as a physician for One Health Ohio and Akron Children's Hospital.  (Dep. Plaintiff at 33-34).  Plaintiff admits that being a physician is a "stressful job."  (Dep. Plaintiff at 27).  However, she has had no work restrictions or accommodations in her post-Fellowship Program employment.  (Dep. Plaintiff at 36, 39, 40 and 41).  This employment has continued to the present date since July of 2012.  (Dep. Plaintiff at 33-34).

> **D.**    **Plaintiff's Performance In the Fellowship Program.**

Plaintiff was in the Fellowship Program from July 1, 2010 through December 16, 2012. (Dep. Plaintiff at 24-25).  Plaintiff admits that she was familiar with UHCMC's policies against discrimination, harassment and retaliation.  (Dep. Plaintiff at 66-68).  Plaintiff also admits that she was aware of UHCMC's various complaint procedures available to employees.  (Dep. Plaintiff at 67).

The essential functions of the Fellowship Program include treating patients, consulting with other pediatric physicians on Endocrinology issues, self-education of assigned topics, attending and participating in educational and administrative meetings, and research.  (Dep. Plaintiff at Ex. 5). The seven faculty members work closely with the fellows by overseeing patient care and teaching

the fellows. (Dep. Plaintiff at 70-71). The faculty members also conduct annual performance evaluations and advise fellows when performance issues arise. (Dep. Plaintiff at Ex. 12).

In June of 2011, after Plaintiff's first year in the Fellowship Program, Plaintiff was advised of significant performance issues and given a formal Remediation Plan. (Dep. Plaintiff at 152-154 and Ex. 11). Four performance areas were addressed in the Remediation Plan: (1) performance evaluations; (2) performance on a training examination; (3) evaluation of Plaintiff's topic presentation; and (4) Plaintiff's research project. (Dep. Plaintiff at Ex. 11). As to the performance evaluations, the Remediation Plan noted that six faculty members had evaluated Plaintiff and these evaluations concluded that Plaintiff's performance in the Fellowship Program was lacking. (Dep. Plaintiff at Exs. 11 and 12). A specific action plan was provided to Plaintiff. (Dep. Plaintiff at Ex. 11). Plaintiff signed the Remediation Plan and agreed to follow the action plan. (Dep. Plaintiff at 165 and Ex. 11).

However, the faculty concluded that Plaintiff's progress remained slow and she was given a Performance Alert Notice in February of 2012 because her performance was "identified as marginal or unsatisfactory." (Dep. Plaintiff at 180 and Ex. 13). The Performance Alert Notice is four pages and it identifies multiple areas of performance issues. (Dep. Plaintiff at Ex. 13). The performance deficiencies included patient care, medical knowledge, practice-based learning, communication skills and professionalism. (Dep. Plaintiff at Ex. 13). Based on these continuing issues, the Fellowship Program faculty concluded that Plaintiff should continue in the Fellowship Program for an additional year. (Dep. Plaintiff at Ex. 13). Plaintiff rejected the twelve month extension, but she stated her willingness to agree if the extension was reduced to six months. (Dep. Plaintiff at 181).

The Performance Alert Notice was also based on a comparison of Plaintiff's performance reviews to her peers in the Fellowship Program. (Dep. Plaintiff at Ex. 14). Plaintiff concedes that her evaluations are significantly below her peers. (Dep. Plaintiff at 196-198 and Ex. 14). In fact,

Plaintiff scored lower than her peers in almost every performance category evaluated.  (Dep. Plaintiff at Ex. 14).

> ### E.      Plaintiff's 2012 Accommodation Request And Resignation.

The performance issues were never resolved because of an accommodation request that was submitted shortly after the issuance of the Performance Alert Notice.  (Dep. Plaintiff at Ex. 6). Specifically, the Performance Alert Notice was presented to Plaintiff on February 29, 2012.  (Dep. Plaintiff at Ex. 13).  Shortly thereafter, on March 6, 2012 – after a five month period of no counseling – Plaintiff re-initiated her psychological counseling.  (Deposition of Francoise Adan, M.D. at Ex. 45 (hereinafter "Dep. Adan at __")).[6]  In that session, for the first time, Plaintiff raised Fellowship Program issues.  (Dep. Adan at 39 and Ex. 45).  Specifically, Plaintiff informed her treating physician that she is "not talking enough during conferences. . . ."  (Dep. Adan at 39 and Ex. 45).

Thereafter, on March 19, 2012, Plaintiff made a formal accommodation request with UHCMC.  (Dep. Plaintiff at Ex. 6).  Accommodation forms were provided to Plaintiff and on April 12, 2012, Plaintiff requested her treating physician to inform UHCMC that Plaintiff's "anxiety disorder would make it difficult" for Plaintiff to participate in weekly department meetings.  (Dep. Adan at Ex. 46).  On May 1, 2012, Plaintiff followed-up with her treating physician and asked her again to provide the requested accommodation.  (Dep. Adan at Ex. 47).  On May 3, 2012, Plaintiff's treating physician completed ADA Health Care Provider/Physician Certification form provided by UHCMC.  (Dep. Adan at Ex. 48).

The ADA Health Care Provider/Physician Certification form set forth the essential functions of the Fellowship Program.  (Dep. Adan at Ex. 48).[7]  One of these essential functions was identified

---

[6] Cited pages are attached as Exhibit 3.
[7] In response to Plaintiff's accommodation request, UHCMC requested medical information from Plaintiff and investigated the essential functions of the Fellowship Program.  (Dep. Plaintiff at Ex. 7).

by the treating physician as an issue: "Actively participate in all educational sessions of the division, with adequate preparation on assigned topic presentations. Take an active role in educating medical students, residents, nurses and other medical personnel." (Dep. Adan at Ex. 48). The treating physician then informed UHCMC, in writing, that Plaintiff's disability affected her ability to perform one of the essential functions of the Fellowship Program. (Dep. Adan at Ex. 48). UHCMC was advised that the accommodation was permanent and that Plaintiff should not be evaluated in the weekly department meetings. (Dep. Adan at Ex. 48). In her deposition, Plaintiff reviewed her physician's submission to UHCMC and she agrees with it. (Dep. Plaintiff at 101).

Plaintiff described the weekly department meetings as being attended by all attending physicians, faculty, fellows, and nurses. (Dep. Plaintiff at 73). She concedes that the meetings address patient care as well as educational topics. (Dep. Plaintiff at 73-74). The Fellowship Program faculty uniformly agree that the weekly department meeting is essential to the Fellowship Program. (Deposition of Dr. Naveen Uli at 121-122, 152 (hereinafter "Dep. Uli at __")[8]; *see also* Deposition of Sumana Narasimhan at 83 (hereinafter "Dep. Narasimhan at __")[9]; Deposition of Rose Gubitosi-Klug at 59-60 (hereinafter "Dep. Gubitosi-Klug at __")[10]). The faculty agree that high level Pediatric Endocrinology cases are analyzed in these meetings and this group analysis provides the faculty with the ability to determine the educational level of fellows. (Dep. Uli at 115, 158-59; Dep. Narasimhan at 83-84; Dep. Gubitosi-Klug at 59). In addition, these high level case analyses permit fellows to identify issues when they are faced with them as a practicing Pediatric Endocrinologist. (Dep. Uli at 165-166; *see also* Dep. Narasimhan at 83-84; Dep. Gubitosi-Klug at 60-61). Based on the faculty's review of the accommodation request, UHCMC denied Plaintiff's

---

[8] Cited pages attached as Exhibit 4.
[9] Cited pages attached as Exhibit 5.
[10] Cited pages attached as Exhibit 6.

request because it sought to eliminate an essential function of the Fellowship Program.  (Dep. Plaintiff at Ex. 8).[11]

As a result of Plaintiff's inability to perform the essential functions of the Fellowship Program, Plaintiff was placed on a leave of absence on July 1, 2012.  (Dep. Plaintiff at 139-140 and Ex. 9).  Plaintiff did not have any further contact with the Fellowship Program after July 1, 2012. (Dep. Plaintiff at 144).  Despite Plaintiff's request for accommodation indicating that she was actively seeking treatment, Plaintiff did not see her physician again until January 2013, nor did she submit any other documents to UHCMC that altered her restrictions. (Dep. Plaintiff at 140-141, *see also* Dep. Adan at 100).  Plaintiff concedes that, rather than return to the Fellowship, Plaintiff chose to seek full time employment as a physician. (Dep. Plaintiff at 139-140, 210-211).  Plaintiff admits that she was unable to work full time and participate in the Fellowship Program. (Dep. Plaintiff at 210-211). Accordingly, on December 16, 2012, Plaintiff resigned from the Fellowship Program in order to accept full-time employment.  (Dep. Plaintiff at Ex. 3).

   **F.**      **Plaintiff's Complaints During The Fellowship Program.**

During the course of the Fellowship Program, it is undisputed that Plaintiff complained on multiple occasions.  (Dep. Plaintiff at 203-204).  Plaintiff's first complaint was submitted shortly after she started in the Fellowship Program.  (Dep. Plaintiff at 203-204).  Thereafter, Plaintiff complained regularly.  (Dep. Plaintiff at 205).  Plaintiff describes her complaints as "early, often, and everything in between."  (Dep. Plaintiff at 205).

Plaintiff's complaints involved her disagreements with her performance evaluations, her lack of a formal orientation[12], and insufficient time to prepare for clinicals.  (Dep. Plaintiff at 111-

---

[11] Plaintiff admits that she does not know if other fellowship programs require such weekly conferences.  (Dep. Plaintiff at 222-223).  However, the faculty believe this is a standard requirement in all similar fellowship programs.  (Dep. Uli at 60-61).
[12] Plaintiff admits that the requirements of the Fellowship Program were reviewed with her and that she was "able to figure it out" despite the alleged lack of a formal orientation.  (Dep. Plaintiff at 220-221).

112).  The complaints were reviewed by Plaintiff's supervisors, the Human Resources Department, and the Graduate Medical Education Department.  (Dep. Plaintiff at 117-118).  Ultimately, the complaints led to Plaintiff's request for an accommodation.  (Dep. Plaintiff at 118).

## IV.  LAW AND ARGUMENT

### A.  Standard of Review.

"Summary judgment should be rendered 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013) (citing Fed. R. Civ. P. 56(a)).  This Court must view the evidence in the light most favorable to Plaintiff and draw all reasonable inferences in her favor.  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008).  However, "[n]ot just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* dispute of *material* fact." *Rogers*, 737 F.3d at 1030 (citing *Baxter*, 533 F.3d at 390) (emphasis in original).  A factual dispute is considered "genuine" and sufficient to deny summary judgment only if the fact is based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 298 (6th Cir. 2008).  Similarly, a factual dispute concerns a "material" fact for purposes of summary judgment only if its resolution might affect the outcome of the suit under the governing substantive law.  *Id.* at 298-99.

Plaintiff brings disability discrimination claims under both the Americans with Disabilities Act ("ADA"), Title VII and R.C. § 4112.02, as well as a claim for aiding and abetting under Ohio law.  (Compl. at ¶¶ 13, 21, 33, 41).  Because Ohio courts generally follow federal law in analyzing disability discrimination and race discrimination claims asserted under the Ohio Revised Code, Plaintiff's state and federal disability discrimination claims should be treated as one for purpose of analysis, and her state and federal age discrimination claims should similarly be addressed together.

*Garcia*, 2010 U.S. Dist. LEXIS 118409, *9 (*citing Plant v. Morton Intern., Inc.*, 212 F.3d 929, 938-39 (6th Cir. 2000); *see also Columbus Civil Serv. Comm'n v. McGlone*, 697 N.E.2d 204 (1998) (noting that the ADA is similar to the Ohio law and looking to federal law in addressing the plaintiff's disability discrimination claim under R.C. § 4112); *see also Gregg v. SBC/Ameritech*, Nos. 2:02-cv-980, 2:02-cv-1232, 2:03-cv-636, 2005 U.S. Dist. LEXIS 12577, *25-26 (S.D. Ohio June 24, 2005 ) ("Ohio courts evaluate discrimination claims presented under § 4112 according to the same standards federal courts utilize to evaluate claims presented under Title VII…").

### B.   <u>Plaintiff's Federal Claims Are Time-Barred.</u>

"A charge filed with the Equal Employment Opportunity Commission is only timely if it is filed within either the 180 or 300 days after the alleged unlawful employment practice occurred." *See Nicholson v. City of Clarksville*, No. 3:11-cv-0355, 2011 U.S. Dist. LEXIS 115307, *14 (M.D. Tenn. Oct. 5, 2011) (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Sain v. Am. Red Cross*, 233 F.Supp.2d 923, 929 (S.D. Ohio 2002).  The 300-day period applies if a state enforces a law that prohibits discrimination on the same basis. *Id.*

In this matter, Plaintiff submitted a request for accommodation and was ultimately placed on a leave of absence on July 1, 2012.  (Dep. Plaintiff at 139-140 and Ex. 9).  Plaintiff admits that she did not have any further contact with the Fellowship Program after July 1, 2012.  (Dep. Plaintiff at 144).  Plaintiff subsequently voluntarily resigned from the program on December 16, 2012 so that she could pursue full time employment. (Dep. Plaintiff at 210-211 and Ex. 3).  Accordingly all employment events other than the alleged constructive discharge occurred on or before July 1, 2012.  However, Plaintiff did not file her EEOC charge until May 1, 2013 – 304 days after the alleged unlawful employment action.  Accordingly, because Plaintiff did not timely file her EEOC charge, all of Plaintiff's federal claims, aside from her claim for constructive discharge, must be

dismissed. *See Sain v. Am. Red Cross*, 233 F.Supp.2d 923, 929 (S.D. Ohio 2002) (dismissing Title VII claims that were not timely filed with the EEOC).

C.   **Plaintiff's Disability Claims Fail as a Matter of Law.**

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014) (citing 42 U.S.C. § 12112(a)).

To recover on a claim of discrimination under either the ADA, a plaintiff must show that: (1) he is an individual with a disability; (2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and (3) the disability was the but-for cause of the employer's adverse action. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996), *as abrogated by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315-16 (6th Cir. 2012) (en banc). First, the plaintiff must establish a prima facie case by showing "that he is disabled and otherwise qualified for the position, either with or without reasonable accommodation." *Rorrer*, 743 F.3d at 1038 (citing *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013)). If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to show that accommodating the plaintiff would impose an undue hardship on the operation of its business." *Id.*; *see also Monette*, 90 F.3d at 1183 n.10, 1186. Plaintiff cannot meet the first, second, or third elements of her *prima facie* case.

1.   **Plaintiff Sought to Eliminate An Essential Function of Her Position, Therefore, Her Disability Discrimination Claim Fails as a Matter of Law**

Plaintiff's claim for disability discrimination fails as a matter of law because Plaintiff's request for an accommodation sought to eliminate an essential function of her position. As defined in the ADA, an individual is "otherwise qualified" if he or she can perform the "essential functions" of the job with or without reasonable accommodation. *Keith v. County of Oakland*, 703 F.3d 918, 925 (6th Cir. 2013) (citing 42 U.S.C. § 12111(8)). As to whether an employer is required to make a

reasonable accommodation, it is well-established that an employer is not required to eliminate an essential function of a position. *See Hall v. United States Postal Service*, 857 F.2d 1073, 1079 (6th Cir. 1988) ("an employer…is not required to accommodate a [disabled] individual by eliminating one of the essential functions of the job… in other words, an accommodation that eliminated an essential functions of the job is not reasonable."). Further, an employer ultimately retains the discretion to choose the reasonable accommodation – the employer is not required to implement an employee's preferred accommodation. *See Keever v. City of Middletown*, 145 F.3d 809, 812 (6th Cir. 1998) (employer has ultimate discretion to choose between reasonable accommodations); *see also Hankins v. Gap, Inc.*, 84 F.3d 797, 800-01 (6th Cir. 1996).

Here, Plaintiff submitted the ADA Health Care Provider/Physician Certification completed by her physician. On the form, the physician identified that Plaintiff could not complete the following essential function: Actively participate in all educational sessions of the division, with adequate preparation on assigned topic presentations. Take an active role in educating medical students, residents, nurses and other medical personnel." (Dep. Adan at Ex. 48). The accommodation listed on the form provided that Plaintiff was to not be evaluated at the weekly departmental meetings. (Dep. Adan at Ex. 48). Plaintiff agrees with her physician's certification that she could not perform the essential function. (Dep. Plaintiff at 100-102).

Defendants engaged in a good faith interactive process with Plaintiff. Defendants reviewed Plaintiff's request and determined that it sought to eliminate an essential function of the Fellowship Program, – evaluation based upon participation in the departmental conferences. Importantly, all the evidence proffered by Defendants, and confirmed by Plaintiff, shows that the evaluation of a fellow's participation in the departmental conferences was critical and an essential function of the Fellowship Program. The faculty members agree that high level Pediatric Endocrinology cases are analyzed in these meetings and this group analysis provides the faculty with the ability to determine

13

the educational level of fellows. (Dep. Uli at 115, 158-59; Dep. Narasimhan at 83-84; Dep. Gubitosi-Klug at 59).   In addition, these high level case analyses permit fellows to identify issues when they are faced with them as a practicing Pediatric Endocrinologist. (Dep. Uli at 165-166; *see also* Dep. Narasimhan at 83-84; Dep. Gubitosi-Klug at 60-61).   Accordingly, because Plaintiff's request sought to eliminate an essential function of the Fellowship Program, her request was not reasonable.

Because Plaintiff's accommodation was unreasonable as a matter of law, UHCMC offered to place Plaintiff on leave so that she may seek the treatment identified in her certification form and work toward coming back to the Fellowship Program. (Deposition of Julie Chester at 98).[13] However, Plaintiff failed to participate in any treatment subsequent to being placed on leave and, instead, sought full time employment. (Dep. Plaintiff at 140-141; *see also* Dep. Adan at 100-101). Accordingly, Plaintiff is not a qualified individual with a disability because she sought to eliminate an essential function of her position and failed to abide by the alternative accommodation provided by UHCMC. *See Hankins*, 84 F.3d at 801 (6th Cir. 1996) ("if [an employee] rejects another [alternative] reasonable accommodation…that is necessary to enable the individual to perform the essential functions of the position…the individual will not be considered a qualified individual with a disability."). Thus, Plaintiff's claim for disability discrimination must be dismissed.

### 2. Plaintiff Was Not Disabled and Plaintiff's Alleged Disability was Not the "But For" Cause for UHCMC's Decision

Assuming, *arguendo*, that participation in, and evaluation of, the departmental conferences is not an essential function of the Fellowship Program, Plaintiff's claims fail nonetheless because she is not disabled.  A person is disabled under the ADA if that person "(1) has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such

---

[13] Cited pages attached hereto as Exhibit 7.

impairment; or (3) has been regarded as having such an impairment." *Breitfelder v. Leis*, 151 Fed. Appx. 379, 383-84 (6th Cir. 2005).

Here, Plaintiff's alleged disability is "social phobia." Plaintiff's physician states that this is a common issue that affects about one-third of the population. (Dep. Minnillo at 80). Plaintiff describes her social phobia as a chronic disorder that affects her ability to communicate, speak in groups, and to think. (Dep. Plaintiff at 12-13). However, Plaintiff admits that her anxiety has not prevented her from (1) speaking in large groups; (2) completing all prior schooling, medical school and residency; (3) affected her ability to work as a physician; (4) or required her to seek any accommodations or restrictions in any employment or education setting aside from the Fellowship Program. (Dep. Plaintiff at 14, 15, 27, 36, 39-41, 44, 48, and 55). Thus, Plaintiff's anxiety is nothing more than a nuisance or minor disturbance that does not substantially limit one of more of her major life activities.

Plaintiff also does not have any record of a disability nor did Defendants regard Plaintiff as having any impairment. The only evidence Plaintiff presented to Defendants pertaining to her alleged disability other than her request for an accommodation is an undated note from Plaintiff's physician saying that she suffered from generalized anxiety disorder. (Dep. Plaintiff at 106-107; Dep. Adan at Ex. 50). Accordingly, UHCMC had no record of Plaintiff's disability, and Plaintiff provides no evidence that UHCMC regarded her as disabled. In addition, because Plaintiff was not disabled, UHCMC's decision to refuse her accommodation was not based upon any disability. Accordingly, because Plaintiff cannot satisfy the second or third element of her *prima facie* case, her claim for disability discrimination should be dismissed.

**D.** **Plaintiff Cannot Establish Her Claim for Race Discrimination Under Title VII or O.R.C. § 4112.**

In order to establish her *prima facie* case for race discrimination under Title VII and R.C. § 4112, Plaintiff must prove that (1) she was a member of a protected class; (2) that she suffered an

adverse employment action; (3) that she was qualified for her position; and (4) she was replaced by a person outside of her protected class or she was treated differently that similarly situated, non-protected employees. *See Myers v. Cuyahoga County*, 182 Fed. App'x 510, 517 (6th Cir. 2006). Plaintiff cannot satisfy the second, third, or fourth elements of her *prima facie* case.

Plaintiff cannot satisfy the second element of her *prima facie* case because she was not subjected to any adverse action.  An adverse action requires "a materially adverse change in the terms or conditions of employment because of the employer's actions." *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007).  Because Plaintiff voluntarily resigned from the Fellowship Program, Defendants are unsure as to what adverse action Plaintiff can even allegedly identify to support her claims other than Plaintiff being placed on leave.  Importantly, UHCMC's decision to place Plaintiff on leave does not constitute an adverse action because it did not constitute a materially adverse change in the terms or conditions of her employment.  Plaintiff was welcome to return to the Fellowship Program, so long as she participated in the departmental conferences.

As to any alleged adverse actions prior to Plaintiff's leave, the several incidents Plaintiff alleged she suffered do not amount to an adverse action, whether individually or collectively. *See Harris v. Challenger Motor Freight, Inc.*, No. 3:98CV7288, 1999 U.S. Dist. LEXIS 21177, *18 (N.D. Ohio Dec. 10, 1999) ("Title VII was designed to address ultimate employment decisions… not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.") (citing *Dollis v. Rubin*, 77 F.3d 777, 781-782 (5th Cir. 1995); *see also Mitchell v. Vanderbilt Univ.*, No. 3:01-1578, 2003 U.S. Dist. LEXIS 29213, *24-25 (M.D. Tenn. Mar. 18, 2003) ("depriving [professor] of a graduate assistant for one summer, requiring [professor] to receive the approval of supervisors before submitting external grant applications, and

16

removing him from a mentor program" do not rise to the level of an adverse employment action or constructive discharge.).

As to Plaintiff's poor performance reviews, Plaintiff cannot rely on her negative reviews as an adverse action because (1) any negative potential affect from the poor evaluations were rendered moot by Plaintiff's leave and eventual voluntary resignation; and (2) the reviews did not affect the terms and conditions of Plaintiff's Fellowship Program. *See Epps. v. FedEx Servs.*, 438 Fed. Appx. 455, 458 (6th Cir. 2011) (negative reviews that do not affect terms and conditions of employment are not adverse actions and do not support claims for discrimination); *see also Evans v. City of Cincinnati*, No. 1:11cv813, 2004 U.S. Dist LEXIS 9594, *33 (S.D. Ohio Jan 27, 2014). Even if Plaintiff had not resigned and her reviews were considered, it is undisputed that Plaintiff had performance issues. Plaintiff admitted that she had performance issues and "had room to improve." (Dep. Plaintiff at 127, 157-158). In fact, Plaintiff agreed to consider an extension of her Fellowship Program by an additional six months due to her performance concerns. (Dep. Plaintiff at 181-182). Finally, it is undisputed that Plaintiff's Fellowship Program was never extended due to Plaintiff being placed on leave and, therefore, it cannot form the basis for an adverse action.

Plaintiff cannot satisfy the third element of her *prima facie* case because, as stated previously herein, she was not qualified for the position because she could not perform the essential functions of the Fellowship Program with or without a reasonable accommodation. Finally, Plaintiff cannot satisfy the fourth element of her *prima facie* case because she cannot show that she was treated differently than any other similarly situated fellows outside of her protected class. The evidence clearly show that Plaintiff was treated the same as the other fellows and Plaintiff offers no evidence whatsoever to disprove this other than providing conclusory allegations based upon nothing other than her own misguided perceptions. Accordingly, summary judgment is appropriate because Plaintiff cannot identify any non-African American fellows who were treated better than

she.  *See Hout v. City of Mansfield*, 550 F.Supp.2d 701, 724, 750 (N.D. Ohio 2008) (plaintiff's failure to identify a similarly situated employee outside of her protected class that was treated better than she precluded her from satisfying her *prima facie* case for race discrimination, rendering summary judgment for defendant appropriate); *see also Thomas v. AT&T Servs.*, 933 F.Supp.2d 954, 966-67, 974 (N.D. Ohio 2013) (summary judgment was granted for defendant on plaintiff's race discrimination claim where plaintiff failed to satisfy her *prima facie* case because her position was eliminated and she could not identify any similarly situated employees outside of her protected class that were treated better than she).[14]

### E.    Retaliation.

Plaintiff cannot prove that Defendants retaliated against her based upon her (1) requesting an accommodation; or (2) making complaints concerning her perceptions that she was being discriminated against because of her disability and/or race.  In order for Plaintiff to satisfy her *prima facie* case for retaliation under the ADA, Title VII, and O.R.C. § 4112, Plaintiff must prove that (1) she engaged in a protected activity; (2) Defendants knew of the protected activity; (3) Defendants took an adverse action against Plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *See Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (applying *prima facie* case to retaliation claim under ADA); *see also Evans v. City of Cincinnati*, No. 1:11cv813, 2014 U.S. Dist. LEXIS 9594, *33 (S.D. Ohio Jan. 27, 2014) (applying *prima facie* case to retaliation claim under Title VII).

---

[14] Assuming, *arguendo*, that Plaintiff is able to satisfy her *prima facie* case –which she cannot—the burden then shifts to UHCMC to offer a legitimate, non-discriminatory reason for its action, which the plaintiff must then prove is pretext for unlawful discrimination. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008). UHCMC's decision to place Plaintiff on leave because she could no longer perform the essential functions of her position was a legitimate, non-discriminatory reason. *See Dick v. J.B. Hunt Transp., Inc.* 772 F. Supp. 2d 806, 819 (N.D. Tex. 2001) (decision to place employee on medical leave and ultimately terminate was a legitimate and non-discriminatory where employee could not perform the essential functions of position); *see also Ceja-Corona v. CVS Pharm., Inc.*, No. 1:12-cv-01703, 2014 U.S. Dist. LEXIS 58801, *23-24 (E.D. Cal. Apr. 28, 2014) (decision to place employee on medical leave and ultimately terminate was legitimate and non-discriminatory where employee could no longer perform job duties).  Plaintiff admits she did not receive any comments as to her race, and fails to provide any evidence to show that UHCMC's decision was pretext for unlawful discrimination.

Plaintiff cannot satisfy her claims for retaliation because, as stated previously herein, Plaintiff was not subjected to any adverse action.

Assuming, *arguendo*, that UHCMC's decision to place Plaintiff on leave was an adverse action, Plaintiff nonetheless cannot show a causal connection between her leave and her complaints and/or request for a reasonable accommodation.  To establish a causal connection, Plaintiff must bring forth credible evidence that her complaints were connected to an adverse action. *See Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 746 (S.D. Ohio 2011).  In doing so, Plaintiff can attempt to establish temporal proximity between the request and the adverse action, or that Plaintiff was treated differently that similarly situated individuals who did not file any complaints. *Id.* (citing *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000).

As to temporal proximity, Plaintiff's complaints were "early, often, and everything in-between." (Dep. Plaintiff at 205).  Plaintiff began complaining to Defendants from the outset of her Fellowship Program, up until her voluntary resignation.  Accordingly, temporal proximity is meaningless in this case where any adverse action against Plaintiff would necessarily be close in time to her protected activity due to the frequent complaints throughout her enrollment in the Fellowship Program.  Nevertheless, temporal proximity alone is not enough to establish a causal connection. *See Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 721-72 (6th Cir. 2012) (citing *Spengler v. Worthington Cylinders*, 615 F.3d 481, 494 (6th Cir. 2010).  Importantly, Plaintiff fails to establish any evidence whatsoever outside of temporal proximity that shows her complaints were related to UHCMC's decision to place her on leave.  Indeed, Plaintiff cannot show that she was treated differently than similarly situated fellows or other individuals employed by UHCMC who did not file any complaints.

As to Plaintiff's request for an accommodation, Plaintiff was placed on leave because she could not perform the essential functions of her position.  The decision to place Plaintiff on leave

19

was not made in retaliation for Plaintiff's request for an accommodation.  In fact, Plaintiff admitted that she was encouraged to submit a request for an accommodation. (Dep. Plaintiff at 118). Plaintiff further admits that UHCMC offered Plaintiff an alternative accommodation when Plaintiff's proffered accommodation sought to eliminate an essential function of her position. (Dep. Plaintiff at 181-182).   Accordingly, because Plaintiff fails to provide any evidence whatsoever that her complaints and/or request for accommodation played any role in UHCMC's decision making process as to whether to place Plaintiff on leave, Plaintiff's claims for retaliation fail as a matter of law. [15]

### F.     Plaintiff Cannot Establish Her Claim That She Was Constructively Discharged.

Plaintiff alleges that she was constructively discharges due to her race and/or disability.  In order to establish a claim for constructive discharge, Plaintiff must show that Defendants "(1) deliberately created intolerable working conditions, as perceived by a reasonable person; and (2) did so with the intention of forcing her to quit working there." *See Kinamore v. EPB Elec. Util.*, 92 Fed. Appx. 197, 204 (6th Cir. 2004).  Courts look to the following factors when evaluating constructive discharge claims: "(1) demotion; (2) reduced salary; (3) reduced job responsibilities; (4) a reassignment to menial or degrading work; (5) a reassignment to work under a younger supervisor; (6) badgering, harassment or humiliation by the employer designed to encourage an employee's resignation; and (7) offers of early retirement or continued employment under on terms less favorable than the employee's former status." *See Kinamore*, 92 Fed. Appx. At 205 (6th Cir. 2004). To satisfy claim for constructive discharge, "a plaintiff must show more than a Title VII violation to prove constructive discharge…" *See Miller v. Dep't of Natural Res.*, No. 2:05-cv-035, 2006 U.S. Dist. LEXIS 23145, *49-50 (W.D. Mich. Apr. 24, 2006).

---

[15] Again, assuming, *arguendo*, that Plaintiff is able to satisfy her *prima facie* case, Plaintiff cannot show that UHCMC's legitimate, non-discriminatory reason for placing her on leave – that she could not perform the essential functions of her Fellowship Program—was unlawful pretext for discrimination. *See Dick* 772 F. Supp. 2d at 819 (N.D. Tex. 2001) *see also Ceja-Corona* 2014 U.S. Dist. LEXIS 58801 at *23-24 (E.D. Cal. Apr. 28, 2014).

Here, Plaintiff provides no evidence whatsoever that she was constructively discharged. Plaintiff cannot satisfy any of the six factors outlined above – she was not demoted; her salary was not reduced; her job duties did not change nor was she assigned menial or degrading work; the supervising faculty did not change; she was not badgered, harassed, or humiliated; and she was not offered early retirement or lesser employment.

Instead, it is undisputed that Plaintiff was placed on leave after UHCMC denied her accommodation because she sought to eliminate an essential function of the Fellowship Program. Plaintiff thereafter failed to seek any treatment or otherwise take any steps towards rejoining the Fellowship Program. (Dep. Plaintiff at 140-141).  Rather, Plaintiff determined that she would rather work full time as a physician than participate in the academic Fellowship Program. (Dep. Plaintiff at 139-140, 210-211).  Plaintiff was aware that she was unable to work full time and maintain enrollment in the Fellowship Program. (*Id.*).  Accordingly, plaintiff voluntarily resigned from the Fellowship Program on December 16, 2012 to pursue a full time position as a pediatrician. (*Id.*). Thus, Plaintiff was not constructively discharged; rather she voluntarily resigned from the Fellowship Program to pursue full time employment after determining she could not perform the essential functions of the position. (Dep. Plaintiff at 139-140, 210-211).

As to Plaintiff's time in the Fellowship Program prior to being placed on leave, Plaintiff offers no evidence that she was treated differently than the other fellows.  Instead, Plaintiff was required to perform the same duties and functions as the other fellows.  Indeed, the testimony provided by the Defendants show that Plaintiff was treated the exact same as the other fellows in the program.  Further, Plaintiff admits that she did not receive any comments as to her race or alleged disability. (Dep. Plaintiff at 121-122).

Finally, because Plaintiff cannot satisfy her Title VII claims or those claims utilizing a similar analysis, Plaintiff's claim for constructive discharge fails as a matter of law.  Accordingly, because Plaintiff cannot show that she was constructively discharged, her claim must be dismissed.

### G.  Aiding and Abetting.

Plaintiff alleges that Rebello aided and abetted Defendants in their discrimination toward Plaintiff.  In order for Plaintiff to succeed on her claim for aiding and abetting, she must satisfy the following elements: "(1) the party whom defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *See Whelan v. Vanderwist of Cincinnati, Inc.*, 11th Dist. Geauga No. 2010-G-2999, 2011-Ohio-6844, ¶ 18.

As an initial matter, Plaintiff's claim for aiding and abetting against Rebello should be dismissed based on the fact that Plaintiff admitted that Rebello did not engage in any wrongful act or conduct towards Plaintiff. (Dep. Plaintiff at 119-120).  Plaintiff simply alleges that she did not believe Mr. Rebello to be helpful. (*Id.*).  However, Rebello did everything that Plaintiff asked him to do. Rebello met with Plaintiff on no fewer than two occasions, each for forty-five minutes. (Deposition of William Rebello at 23 and 31 (hereinafter "Dep. Rebello at __"); *see also* Dep. Plaintiff at 111).[16]  Rebello forwarded Plaintiff's discrimination claims and performance issues to Julie Chester in the Human Resources Department and Dr. Jerry Shuck in Graduate Medical Education. (Dep. Rebllo at 25-26, 30-34).  Plaintiff admits that Rebello forwarded her to human resources and Graduate Medical Education. (Dep. Plaintiff at 116-117).  Plaintiff further admits that after being forwarded by Rebello, she met with Julie Chester and Dr. Shuck on several occasions,

---

[16] Cited pages attached as Exhibit 8.

and also had a meeting with both Drs. Shuck and Uli. (Dep. Plaintiff at 108, 117-118).  Thus, the evidence shows that Rebello did everything in his power to assist Plaintiff with her complaints.

As to the second and third elements of Plaintiff's claims, there was no illegal or tortious activity Defendants were involved with as to the Plaintiff.  As stated herein, plaintiff was treated the same as all other fellows, Plaintiff's complaints were fully investigated, Plaintiff was encouraged to apply for an accommodation, and Plaintiff was placed on leave after seeking to eliminate an essential function of the Fellowship Program.  Accordingly, because Plaintiff fails to provide any evidence to support her claim of aiding and abetting, her claim must be dismissed.

## V.  CONCLUSION

For all of the foregoing reasons, Defendants respectfully assert that the evidentiary record establishes that Plaintiff's claims are without merit and Defendants are entitled to summary judgment as a matter of law as to all of Plaintiff's claims set forth in her Complaint.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Liana R. Ho9llingworth (0085185)
**VORYS, SATER, SEYMOUR AND PEASE LLP**
200 Public Square, Suite 1400
Cleveland, OH  44114
Telephone:  216-479-6100
Facsimile:   216-479-6060
Email:    dacampbell@vorys.com
              lrhollingsworth@vorys.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing *Defendants'*

*Motion for Summary Judgment and Memorandum in Support* was filed electronically on this 16th

day of November 2017.  Notice of this filing will be sent to all parties, when applicable, by

operation of the Court's electronic filing system.  Parties may access this filing through the Court's

electronic filing system.  If parties will not receive notice via the Court's electronic filing system, a

true and correct copy of the foregoing will be served via regular United States Mail, postage

prepaid, upon the following:

> Fred M. Bean, Esq.
> **THE SPITZ LAW FIRM, LLC**
> 25200 Chagrin Boulevard, Suite 200
> Beachwood, OH  44122
> Fred.Bean@SpitzLawFirm.com

> */s/ David A. Campbell*
> David A. Campbell (0066494)
> Liana R. Ho9llingworth (0085185)
> **VORYS, SATER, SEYMOUR AND PEASE LLP**

24