| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | :SS |
| COUNTY OF CUYAHOGA | ) | |

      I, Alison O'Donnell, duly sworn in and under oath hereby state the following truths based upon my own personal knowledge:

1. University Hospital's Pediatric Endocrinology Fellowship Program gives licensed physicians the opportunity become board-certified pediatric endocrinologists.

2. I applied for one of two open fellowship spots in June, 2009.

3. Early in my fellowship, I disclosed to Dr. Naveen Uli that I suffered from social anxiety disorder.

4. Dr. Uli did not provide me with the same amount of time for orientation as other fellows.

5. Dr. Sumana Narasimhan assigned me a presentation without prep time, whereas other fellows were given days or weeks to prepare for presentations.

6. Dr. Narasimhan forced me to complete work while I was on a pre-excused vacation day.

7. Dr. Narasimhan and Dr. Uli forced me to see patients who were over an hour late to appointments despite protocol to have the patient reschedule.

8. Dr. Narasimhan referred to me by my first name, "Alison" in front of patients and their families instead of "Dr. Mathews," my last name at the time, but did not do this with other fellows.

9. I was given clinical assignments without the same notice as given to other fellows.

10. Dr. Narasimhan forced me to contact patients directly and reschedule them for appointments.

PLAINTIFF'S<br>Exhibit 1

11. Dr. Narasimhan directed me on a sticky-note to call and reschedule a patient. Attached as Exhibit 4 is a true and accurate copy of the sticky note given to me by Dr. Narasimhan directing me to reschedule a patient.

12. Dr. Uli accused me of not writing my patient notes or charts timely or thoroughly, but my notes were more detailed than the example note provided by Dr. Uli. Attached as Exhibit 5 are redacted copies of an example of my chart note versus a much shorter, less detailed example note provided to me by Dr. Uli.

13. During the Wednesday conferences, the fellows would be called upon to answer questions and give presentations.

14. During these conferences, there would be heated debate over medical issues and cases, and sometimes the debates would devolve into shouting matches, creating an environment not conducive for someone like me suffering from social anxiety disorder.

15. Regarding my research project, I initially went to Dr. Uli and Dr. Rose Gubitosi-Klug about ideas for my project, but they were rejected.

16. Instead, both Dr. Uli and Dr. Gubitosi-Klug suggested that I work with another fellow on her project, which would not be sufficient to meet the "individual" requirements of the research project requirement.

17. In October, 2011, because the disparate treatment had not stopped, I escalated my discrimination complaints to William Rebello, the manager of graduate medical education.

18. I complained to Mr. Rebello a second time regarding ongoing discriminatory treatment and gave him a written summary of the disparate treatment against me. Attached as Exhibit 6 is a true and accurate copy of the written statement I provided to Mr. Rebello.

19. I also gave Dr. Jerry Shuck, Mr. Rebello's boss, a written summary of my complaints.

20. On February 29, 2012, Dr. Uli placed me on a Performance Alert, which violated UH's Resident Manual because it was not issued "within 7-10 days of identifying an area of concern" even though the listed alleged concerns were far older than 7-10 days.

21. In March, 2012, I requested a formal disability accommodation from UH.

22. My treating psychiatrist, Dr. Francoise Adan provided a letter on March 6, 2012 stating that I was "under [her] care and has a diagnosis of generalized anxiety disorder." I provided this letter to UH.

23. On May 11, 2012, I emailed UH's human resources director, Julie Chester expressing "concern that nothing seems to be resolving" regarding the ongoing disparate treatment against me, but Ms. Chester never responded.

24. UH denied my disability accommodation request even though I complied with everything I was required to submit.

25. Because UH would not accommodate my disability, I was forced to pursue a new job with UH Ashtabula Pediatrics.

26. On September 12, 2012, I received a letter from Ashtabula confirming my employment, scheduled to start on December 1, 2012. Attached as Exhibit 7 is a true and accurate copy of the Memorandum of Understanding.

27. To take this position, I was forced to resign from the fellowship. Attached as Exhibit 8 is email correspondence with UH Ashtabula regarding my need to resign from the fellowship.

28. Relying on this, because UH would not accommodate me and allow me to return to the fellowship, I submitted a resignation letter, effective December 16, 2012; but thereafter, UH prohibited me from joining Ashtabula. Attached as Exhibit 9 is a true and accurate copy of the letter revoking my employment with UH Ashtabula.

**FURTHER AFFIANT SAYETH NAUGHT.**



ALISON O'DONNELL

The above appeared before me on December 8, 2017, and under oath and of her own free will did sign the above.

FRED M. BEAN
NOTARY PUBLIC, STATE OF OHIO
CUYAHOGA COUNTY
My Commissions does not expire

NOTARY PUBLIC

4