**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALISON O'DONNELL | ) | CASE NO.  1:16-CV-2480 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| vs. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS HEALTH | ) | |
| SYSTEM, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY MEMORANDUM IN**
**SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff's Memorandum in Opposition (the "Opposition") confirms that Defendants'
Motion for Summary Judgment should be granted in its entirety.  It is undisputed that Plaintiff was
having performance difficulties in the Fellowship Program.  However, despite significant
performance issues over her first eighteen months in the Fellowship Program, Plaintiff never raised
accommodation issues with her treating physicians. Rather, when faced with the prospect of
extending the Fellowship Program by one year due to her performance issues, Plaintiff requested
that an essential function of the Fellowship Program, mandatory staff meetings, be eliminated.
Defendants were under no legal obligation to eliminate this essential function and Plaintiff was
lawfully placed on a medical leave of absence in 2012. *Hall v. United States Postal Service*, 857
F.2d 1073, 1079 (6th Cir. 1988).

Rather than seek to return to the Fellowship Program, Plaintiff voluntarily resigned from the
Fellowship Program six months later in order to accept full-time employment as a physician. It is
well-established that "[a]n employee who remains on the job while looking for alternative
employment is hard-pressed to establish that her working conditions were intolerable." *Eichler v.*

1

*Am. Int'l Group, Inc.*, No. 05Civ.5167, 2007 U.S. Dist. LEXIS 23445, *55 (S.D. NY Mar. 23, 2007). This is especially true when Plaintiff admits that she had no contact with Defendants during the course of her six month medical leave of absence.

Based on the undisputed facts, summary judgment should be granted in favor of Defendants. There are no genuine issues of material fact for trial and Plaintiff's deposition confirms that summary judgment should be entered in favor of Defendants on all claims asserted. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

## II.    RELEVANT FACTS

A complete statement of the relevant facts is set forth in Defendants' Motion and those facts will not be restated herein. However, Defendants will address certain factual allegations in the Opposition in order to confirm that there are no genuine issues of material fact that exist for trial.

### A.    Plaintiff Is Not Disabled.

The Opposition alleges, in conclusory fashion, that Plaintiff "is disabled." (Opposition at 2). The Opposition, however, fails to cite any actual impact Plaintiff's alleged disability has had on her personal or professional life. (Opposition at 2-3).

When questioned regarding the impact her anxiety has had on her life, Plaintiff admits that she could give a presentation to large groups if she is given time to prepare. (Deposition of Plaintiff 14-15 (hereinafter "Plaintiff Dep. at __")).[1] More importantly, Plaintiff has worked as a practicing physician continuously since 2012. (Plaintiff Dep. at 33-34). Plaintiff admits that being a physician is "stressful," yet she has never had any medical restrictions as a physician nor has she sought any work accommodations. (Plaintiff Dep. at 27 and 36-42). Similarly, Plaintiff graduated from high school, undergrad, medical school and a residency program without accommodations. (Plaintiff Dep. at 51).

---

[1] Cited pages attached as Exhibit A.

As to the Fellowship Program, from June 30, 2010 through September 6, 2011, Plaintiff did not report a single issue with the Fellowship Program to her physicians. (Deposition of Dr. Paul Minnillo at 85-87 and Ex. 42 (hereinafter referred to as "Dep. Minnillo at ___"))[2]. Rather, during this initial period, Plaintiff informed her physicians that she was receiving "positive feedback" as to her performance and believed she was "doing well at work." (Dep. Minnillo at 86-87).  Plaintiff's March 2012 request for accommodation request was the only accommodation submitted to UHCMC. (Plaintiff Dep. at 31-32, 90). Plaintiff admits that she can perform all of the other essential functions of the Fellowship Program, including treating patients, speaking with patient families, and meeting with other physicians. (Plaintiff Dep. at 94-95).

**B.** **Active Participation in the Weekly Departmental Conferences Is an Essential Function of the Fellowship Program.**

The evidence clearly establishes that the evaluation of a fellow's active participation in the weekly departmental conferences is an essential function of the Fellowship Program. Despite the length of the Opposition, Plaintiff's only challenge to whether the staff meetings were an essential function of the Fellowship Program is Plaintiff's allegation that Defendant Uli created an updated essential function list when the accommodation request was submitted. (Opposition at 8-9).

In her deposition, Plaintiff admitted that she was graded on her performance in the departmental meetings (Plaintiff Dep. at 84-85), that faculty members requested that she participate more in the departmental meetings (Plaintiff Dep. at 87), that every member of the department attended the weekly departmental meetings (Plaintiff Dep. at 73 and 77), and that the main point of the departmental meetings was to "discuss patients and go over educational topics."  (Plaintiff Dep. at 73).  Moreover, all faculty members uniformly agree that the weekly departmental conferences are essential to the Fellowship Program. (Deposition of Dr. Naveen Uli at 121-122, 152 (hereinafter

---

[2] Cited pages attached as Exhibit B.

referred to as "Dep. Uli at __")[3]; *see also* Deposition of Sumana Narasimhan at 83 (hereinafter referred to as "Dep. Narasimhan at __")[4]; Deposition of Rose Gubitosi-Klug at 59-60 (hereinafter referred to as "Dep. Gubitosi-Klug at __")[5]). The faculty agree that high level Pediatric Endocrinology cases are analyzed in these meetings and this group analysis provides the faculty with the ability to determine the educational level of fellows. (Dep. Uli at 115, 158-59; Dep. Narasimhan at 83-84; Dep. Gubitosi-Klug at 59). In addition, these high level case analyses permit fellows to identify issues when they are faced with them as a practicing Pediatric Endocrinologist. (Dep. Uli at 165-166; *see also* Dep. Narasimhan at 83-84; Dep. Gubitosi-Klug at 60-61).

In addition, it is undisputed that the Certification form provided to Plaintiff identified the following essential function: "Actively participate in all educational sessions of the division, with adequate preparation on assigned topic presentations. Take an active role in educating medical students, residents, nurses and other medical personnel." (Deposition of Dr. Francoise Adan at Ex. 48 (hereinafter referred to as "Dep. Adan ___")[6]; *see also* Dep. Plaintiff at 100-101). Plaintiff admits, and agrees with, her physician's determination that her alleged disability affected her ability to perform this essential function, that her condition was permanent, and that she should not be evaluated on her performance in the departmental conferences. (Dep. Plaintiff at 101).

## C.   Plaintiff Presents No Evidence of Any Alleged Adverse Actions Other Than The Denial of Her Accommodation Request.

Plaintiff fails to present any evidence whatsoever of any alleged adverse actions other than UHCMC's denial of her request for accommodation. Despite having severe performance issues, Plaintiff was never discharged or suspended. (Dep. Plaintiff at 142). Rather, Defendants provided Plaintiff with written documentation and evaluations outlining her performance issues, and detailing

---

[3] Cited pages attached as Exhibit C.
[4] Cited pages attached as Exhibit D.
[5] Cited pages attached as Exhibit E.
[6] Cited pages attached as Exhibit F.

those areas in which Plaintiff needed to improve. (Dep. Plaintiff at 152-153, 180, 196-198 and Exs. 11, 13-14). Plaintiff admitted to having performance issues identified in the evaluations and documentation. (Dep. Plaintiff at 84-85, 179-180, 187). Due to these performance issues, the faculty concluded that Plaintiff should continue in the Fellowship Program for an additional year. (Dep. Plaintiff at Ex. 13). Plaintiff rejected the twelve month extension, but she stated her willingness to agree if the extension was reduced to six months. (Dep. Plaintiff at 181). However, Plaintiff's fellowship was never extended due to her submitting her request for accommodation prior to the conclusion of her second year in the Fellowship Program. (Dep. Plaintiff at 227).

### D.  **Plaintiff's Complaints Were Fully Investigated.**

Plaintiff testified that her complaints were "early, often, and everything in between." (Dep. Plaintiff at 205).  As to the substance of Plaintiff's complaints, Plaintiff's complaints involved minor issues that were technical in nature. (*See* Opposition at Ex. 6; *see also* Dep. Plaintiff at 111-115).  Indeed, Plaintiff testified that Defendants never made any comments or remarks concerning Plaintiff's race or disability. (Dep. Plaintiff at 121-122).[7] Rather, Plaintiff's complaints involved any slight, minor difference perceived by Plaintiff between her and the other fellows, such as her orientation process, clinic scheduling, and handling of patients. (Dep. Plaintiff at 112-113).  Further, even when Plaintiff was provided special attention by the faculty due to her performance concerns, Plaintiff found ways to complain and construe this special attention as discrimination. (Dep. Plaintiff at 117-118, 178-179).

Nonetheless, it is undisputed that Defendants met with Plaintiff on multiple occasions and investigated her complaints. (Dep. Plaintiff at 117-118; *see also* Deposition of Julie Chester at 106

---

[7] Plaintiff alleges that Dr. Uli referred to African American hair as "wild" and "unruly." (*See* Opposition at 23).  While Dr. Uli denies using the terms "wild" and "unruly," it is undisputed that Dr. Uli's comment was not discriminatory, but instead relevant to the diagnosis of an African American patient. (Dep. Plaintiff at 122-124; *see also* Dep. Uli at  173-175).

(hereinafter referred to as "Dep. Chester at ___")[8]; Deposition of William Rebello at 37 (hereinafter referred to as "Dep. Rebello at ___")[9]).  Plaintiff admitted that she met with William Rebello on at least two occasions concerning her complaints. (Dep. Plaintiff at 110-111). Plaintiff concedes that Rebello referred her to Julie Chester in human resources and to Dr. Jerry Shuck, the head of the Graduate Medical Education Department. (Dep. Plaintiff at 117). It is undisputed that Plaintiff met with Ms. Chester and Dr. Shuck on several occasions concerning her complaints. (Dep. Plaintiff at 108, 117-118; Dep. Chester at 106). Mr. Rebello and Ms. Chester testified that Plaintiff's complaints were investigated to conclusion, with a determination that Plaintiff's complaints were unsubstantiated. (Dep. Rebello at 37; *see also* Dep. Chester at 108-109).

### E.  **Plaintiff Voluntarily Resigned to Obtain Full-Time Employment as a Physician.**

Plaintiff was placed on leave on July 1, 2012. (Dep. Plaintiff at 25).  Plaintiff's physician indicated in her request for accommodation that Plaintiff would seek treatment toward returning to the Fellowship Program.  (Dep. Plaintiff at 140-141 and Ex. 6). However, Plaintiff failed to seek any treatment and, instead, sought full-time employment. (Dep. Plaintiff at 140-141; *see also* Dep. Adan at 100).  Plaintiff admits that she was unable to simultaneously maintain full-time employment and hold one of the six spots in the Fellowship Program. (Dep. Plaintiff at 210-211). Accordingly, Plaintiff voluntarily resigned on December 16, 2012 to obtain full-time employment. (Dep. Plaintiff at 211 and Ex. 3). Plaintiff admits that she did not have any contact with Defendants or anyone within the Fellowship from the time she was placed on leave to the time she voluntarily resigned from the Fellowship Program. (Dep. Plaintiff at 139).

## III.  **LAW AND ARGUMENT**

### A.  **Plaintiff Was Not Constructively Discharged, But Instead Voluntarily Resigned to Obtain Full Time Employment as a Physician.**

---

[8] Cited pages attached as Exhibit G.
[9] Cited pages attached as Exhibit H.

The Opposition alleges that Plaintiff was constructively discharged because she was in a "no win" situation during her leave of absence.  (Opposition at 17).  The documented facts, however, firmly establish that Plaintiff cannot prove either element of a constructive discharge.  *See Kinamore v. EPB Elec. Util.*, 92 Fed. Appx. 197, 204 (6th Cir. 2004).

Plaintiff was on a leave of absence for five months.  Almost immediately after the leave began, Plaintiff made the decision to seek full-time employment outside of the Fellowship Program. Plaintiff did not seek medical attention or otherwise attempt to return to the Fellowship Program. Rather, Plaintiff eventually submitted her resignation from the Fellowship Program in order to accept full-time employment.

"An employee who remains on the job while looking for alternative employment is hard-pressed to establish that her working conditions were intolerable." *Eichler*, 2007 U.S. Dist. LEXIS 23445 at 55 (S.D. NY Mar. 23, 2007); *see also Regis v. Metropolitan Jewish Geriatric Ctr.*, No. 97-CV-0906, 2000 U.S. Dist. LEXIS 2215, *31 (E.D. NY Jan 11, 2000) ("[t]he fact that [plaintiff] was looking for alternative employment for several months before resigning from MJGC undercuts her claim that her employment at MJGC was so intolerable so as to constitute a constructive discharge."); *Baptiste v. Cushman & Wakefield*, No. 03Civ.2102, 2007 U.S. Dist. LEXIS 19784, *12 (S.D. NY Mar. 7, 2007) (employer entitled to summary judgment on plaintiff's allegation of constructive discharge where plaintiff began looking for alternative employment months prior to resigning and then waited two weeks to submit resignation after accepting alternative employment); *Wagner v. Sanders Associates, Inc.*, 638 F.Supp. 742, 745-46 (C.D. Cal. 1986) (summary judgment for employer was proper where plaintiff's decision to remain employed and look for alternative employment precluded her from establishing that she was constructively discharged).

Plaintiff's situation is identical to that in *Guyton v. Novo Nordisk, Inc.*, 151 F.Supp. 1057, 1090-91 (C.D. Cal. 2015).  There, the employee alleged a variety of discriminatory acts by his

employer and eventually went on a leave of absence. *Id.* at 1066. While on his leave of absence, Guyer sought and secured alternative employment and, thereafter, resigned. *Id.* Guyer subsequently brought suit against his employer alleging, *inter alia*, that he was constructively discharged. The Court granted summary judgment for the employer, finding that Guyer's decision to remain on leave and resign only after finding alternative employment did not support his theory that he was constructively discharged. Based on *Guyton*, Plaintiff cannot establish a constructive discharge and judgment should be entered in favor of Defendants on these claims.

### B.  Plaintiff's Leave of Absence is the Only *Potential* Adverse Action Applicable in this Case and, Therefore, Plaintiff's Federal Claims Are Untimely.

Because Plaintiff was not constructively discharged, she must base her federal claims upon one of the other adverse actions which she alleges: (1) Defendants allegedly did not adequately investigate Plaintiff's complaints; (2) Defendants placed O'Donnell on a performance plan that was allegedly inconsistent with UHCMC's policies; (3) UHCMC denied Plaintiff's request for accommodation; and (4) UHCMC placed Plaintiff on leave.[10] (*See* Opposition at 20). Importantly, each alleged adverse action is outside of the limitations period. Accordingly, Plaintiff's federal claims are barred as untimely. *See Nicholson v. City of Clarksville*, No. 3:11-cv-0355, 2011 U.S. Dist. LEXIS 115307, *14 (M.D. Tenn. Oct. 5, 2011) (citing 42 U.S.C. § 2000e-5(e)(1)) ("[a] charge filed with the Equal Employment Opportunity Commission is only timely if it is filed within either the 180 r 300 days after the alleged unlawful employment practice occurred."); *see also Sain v. Am. Red Cross*, 233 F.Supp.2d 923, 929 (S.D. Ohio 2002).

Further, Plaintiff cannot circumscribe the 300-day time limit by relying on a theory of continuing violation. "The continuing violation doctrine applies to claims based upon a defendant's ongoing policy or pattern of discrimination rather than discrete acts of discrimination." *See Pilla v.*

---

[10] Defendants deny that any of adverse actions alleged by Plaintiff are sufficient to constitute a material change in the terms and conditions of her employment and, thus, are not adverse actions for purposes of satisfying her discrimination claims. *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007).

*Delaware River Port Auth.*, No. 98-5723, 1999 U.S. Dist. LEXIS 6553, *10-11 (E.D. PA May 6, 1999). Indeed, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Purnell v. Arrow Fin. Servs., LLC*, No. 07-1903, 2008 U.S. App. LEXIS 25488, *12 (6th Cir. Dec. 16, 2008) (citing *Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). "A discrete retaliatory or discriminatory act occurred on the day that it "happened." *Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002).

Here, each of the alleged adverse acts are discrete acts that occurred on the day that it "happened."  *See Mallard v. Battelle Energy Alliance, LLC*, No. 4:12-cv-00587-BLW, 2013 U.S. Dist. LEXIS 80506, *17-18 (Dist. ID. June 6, 2013)(citing *Morgan*, 536 U.S. 101 (2002) (Plaintiff failed to allege a continuing violation based upon being placed on unpaid administrative leave because the leave itself was a separate, discrete act rather than "one extended action that began…when [plaintiff] was placed on unpaid administrative leave."); *Keith-Foust v. N.C. Cent. Univ.*, No. 1:15CV470, 2016 U.S. Dist. LEXIS 106120, * 27 (Aug 11, 2016) ("like a termination or nonpromotion, a refusal to provide the requested accommodation is easy to identify and requires no further adverse action to support a claim.  That refusal is this a discrete act for which the continuing violation doctrine is unavailable."); *Pilla,* 1999 U.S. Dist. LEXIS 6553 at *10-11 (E.D. PA May 6, 1999) (plaintiff unable to allege a continuing violation based upon leave of absence because leave itself was a separate, discrete act).   Accordingly, because each alleged act is a discrete act that occurred outside of the 300 day limitations period, Plaintiff's federal claims are time barred.

**C.**     **Plaintiff's Disability Discrimination Claims Fail as a Matter of Law.**

**1.**     **Active Participation in the Wednesday Conferences Is an Essential Function of the Fellowship Program.**

As defined in the ADA, an individual is "otherwise qualified" if he or she can perform the "essential functions" of the job with or without reasonable accommodation.  *Keith v. County of Oakland*, 703 F.3d 918, 925 (6th Cir. 2013) (citing 42 U.S.C. § 12111(8)).  As to whether an

9

employer is required to make a reasonable accommodation, it is well-established that an employer is not required to eliminate an essential function of a position. *See Hall,* 857 F.2d at 1079 (6th Cir. 1988) ("an employer…is not required to accommodate a [disabled] individual by eliminating one of the essential functions of the job….").

It is undisputed that the ADA Health Care Provider/Physician Certification form provided to Plaintiff set forth the following essential function of the Fellowship Program: "Actively participate in all educational sessions of the division, with adequate preparation on assigned topic presentations.  Take an active role in educating medical students, residents, nurses and other medical personnel." (Dep. Adan at Ex. 48; *see also* Dep. Plaintiff at 101).  Plaintiff admits that her physician informed UHCMC, in writing, that her alleged disability affected her ability to perform one of the essential functions of the Fellowship Program. (Dep. Plaintiff at 101).  Plaintiff concedes that her physician informed UHCMC that her accommodation was permanent and that she should not be evaluated in the weekly departmental meetings. (*Id.*). Importantly, Plaintiff does not assert in her opposition that she was, or is now, able to participate, or be evaluated upon her participation, in the weekly departmental conferences.

Plaintiff cannot rebut the fact that evaluation of her active participation in the weekly departmental conferences was an essential function of the Fellowship Program.  In fact, Plaintiff does not even attempt to dispute the faculty testimony pertaining to the importance of the weekly departmental conferences to the Fellowship Program.  Instead, Plaintiff solely relies upon her allegation that the phrase "actively participating in educational sessions" was not included in the job description provided to Plaintiff at the beginning of her Fellowship Program and, therefore, cannot qualify as an essential function.  However, it is well-established that the absence of a certain duty or requirement from a job description is not dispositive as to whether it qualifies as an essential function of a position. *See Koss v. Lincare, Inc.*, No. 11-11932, 2012 U.S. Dist. LEXIS 70469, *32-

35 (E.D. Mich May 21, 2012) (failure to state requirement in a job description did not negate it from qualifying as an essential function of the position, as the "determination [of an essential function] should reflect the actual functioning and circumstances of the particular enterprise involved."); *see also EEOC v. AT&T Mobility Servs. LLC*, No. 10-13889, 2011 U.S. Dist. LEXIS 144195, *20 (E.D. Mich. Dec. 15, 2011) ("[a]n inquiry into whether a particular duty is an essential function of the job should be based on more than statements in a job description). Rather, determining whether a duty is an essential function of a position, "should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved." *Brown v. Chase Brass & Copper Co.*, 14 Fed. Appx. 482, 489 (6th Cir. 2001).

Similarly, the fact that Dr. Uli submitted a list of essential functions to UHCMC," which differed from Plaintiff's job description does not discount it from being an essential function of the Fellowship Program. Indeed, "increased standards can still be essential functions of a position, even though they are imposed after the allegedly disabled individual was hired… essential functions need not remain constant and can evolve while a disabled individual is employed." *Marsh v. Terra Int'l (Okla.), Inc.*, 122 F.Supp. 3d 1267, 1286 (N.D. OK 2015); *see also Thompson v. Heiner's Bakery*, No. 7:11-cv-00349, 2012 U.S. Dist. LEXIS 69471, *13 (W.D. VA May 18, 2012). This holds true even when essential functions are determined after an employee's request for accommodation is submitted. *See McLennan v. Oncor Elec. Delivery Co., LLC, No. 3:12-CV-531-G(BF),* 2014 U.S. Dist. LEXIS 125445, *19-20 (N.D. TX Aug. 18, 2014) (employer's change of job description after employee filed a workers' compensation claim was not evidence of disability discrimination where employer followed the instructions of the employee's physician, which stated that the employee could not return to work at a certain time).

Here, the testimony provided by the faculty unequivocally establishes that active participation in the weekly departmental conferences was an essential function of the Fellowship

Program.  (Dep. Uli at 121-122, 152; *see also* Dep. Narasimhan at 83; Dep Rose Gubitosi-Klug at 59-60. The faculty agree that high level Pediatric Endocrinology cases are analyzed in these meetings and this group analysis provides the faculty with the ability to determine the educational level of fellows.  (Dep. Uli at 115, 158-59; Dep. Narasimhan at 83-84; Dep. Gubitosi-Klug at 59). In addition, these high level case analyses permit fellows to identify issues when they are faced with them as a practicing Pediatric Endocrinologist.  (Dep. Uli at 165-166; *see also* Dep. Narasimhan at 83-84; Dep. Gubitosi-Klug at 60-61).  Plaintiff provides no evidence that creates any issue of material fact as to whether evaluation of Plaintiff's active participation in the weekly departmental conferences was not essential to the "actual functioning and circumstances" of the Fellowship Program. *See Brown*, 14 Fed. Appx. at 489 (6th Cir. 2001).

## 2.        Defendants Engaged in the Interactive Process.

There is no question of fact as to whether Defendants engaged in the interactive process with Plaintiff.  Dr. Uli and the other faculty members discussed the role of the weekly departmental conferences and determined that there was no alternative for participation and evaluation of a fellow's performance in the weekly departmental conferences. (Dep. Uli at 150-152).  Additionally, Plaintiff was offered an alternative accommodation—to be placed on leave to seek treatment to work towards coming back to the Fellowship Program—but failed to abide by the alternative accommodation. (Dep. Plaintiff at 140-141).

Moreover, assuming *arguendo*, that Defendants did not engage in the interactive process, Plaintiff's claim still fails because Defendants did not have an obligation to engage in the interactive process with Plaintiff since her accommodation, which sought to eliminate an essential function of the Fellowship Program, was not possible.  *See Mathis v. City of Red Bank*, 657 Fed. Appx. 557, 592 (6th Cir. 2016); *see also Hernandez v. Int'l Shoppes, LLC*, 100 F.Supp. 3d 232, 265 (E.D. NY 2015) ("[a]n employee may not recover based on his employer's failure to engage in an 'interactive

process' about a reasonable accommodation if he cannot show that a reasonable accommodation existed at the time of dismissal.").

Accordingly, Plaintiff is not a qualified individual with a disability because she sought to eliminate an essential function of her position and failed to abide by the alternative accommodation provided by UHCMC. *See Hankins*, 84 F.3d at 801 (6th Cir. 1996) ("if [an employee] rejects another [alternative] reasonable accommodation…that is necessary to enable the individual to perform the essential functions of the position…the individual will not be considered a qualified individual with a disability.").

### 3.  Plaintiff Was Not Disabled Because Her Alleged Anxiety Did Not Substantially Limit a Major Life Activity.

Assuming, *arguendo*, that participation in, and evaluation of, the departmental conferences is not an essential function of the Fellowship Program, Plaintiff's claims fail nonetheless because she is not disabled.  A person is disabled under the ADA if that person "(1) has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such impairment; or (3) has been regarded as having such an impairment." *Breitfelder v. Leis*, 151 Fed. Appx. 379, 383-84 (6th Cir. 2005).

Plaintiff's attempt to overstate her alleged limitations in an effort to convince this Court that she is disabled do not change the fact that her alleged "social phobia" did not (1) prevent her from speaking in large groups; (2) prevent her from completing all prior schooling, medical school and residency; (3) affect her ability to work as a physician; or (4) require her to seek any accommodations or restrictions in any employment or education setting aside from the Fellowship Program. (Dep. Plaintiff at 14, 15, 27, 36, 39-41, 44, 48, and 55). Here, Plaintiff's anxiety is nothing more than a common nuisance which Plaintiff raised in response to significant performance issues. Accordingly, because (1) Plaintiff is not disabled; (2) does not have a record of any disability; and

(3) was not regarded as being disabled, she is not disabled as defined under the ADA and cannot satisfy her *prima facie* case.

D. **Plaintiff's State Law Discrimination Claims and Retaliation Claims Fail as a Matter of Law**

Plaintiff cannot satisfy her state law claims for race and disability discrimination (disparate treatment), nor can she satisfy her state law claim for retaliation. As stated previously herein, the only adverse action that was taken against Plaintiff was UHCMC's denial of her request for accommodation. However, UHCMC decision to deny Plaintiff's accommodation was lawful under the ADA and Ohio law and was not based upon any protected activity. Accordingly, Plaintiff's claim for retaliation fails as a matter of law because she cannot show a causal connection between her accommodation request and any protected activity.

As to the other adverse actions alleged by Plaintiff, these alleged acts are all minor and trivial and, therefore, do not materially affect the terms and conditions of Plaintiff's employer as required under Ohio and Federal law. *See Foster v. Michigan,* 573 Fed. Appx. 377, 394 (6th Cir. 2014) ("an adverse action is "a materially adverse change in the terms and conditions" of [an employee's] work; examples include "termination of employment, a demotion . . . a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation… *De minimis* actions are not materially adverse."); *see also Samadder v. DMF of Ohio, Inc.*, 154 Ohio App. 3d 770, 781 (10th Dist. 2003) ("adverse employment actions must materially affect the plaintiff's term and conditions of employment resulting in a job-related detriment…not everything that makes an employee unhappy is an actionable adverse action").

With respect to the other elements of Plaintiff's state law discrimination claims, Plaintiff (1) was not disabled; (2) was not qualified for her position due to her poor performance and failure to abide by the alternative accommodation provided by UHCHC; and (3) cannot identify another

14

fellow who was treated any differently than she or who was provided the same accommodation sought by Plaintiff.  *See Hankins v. Gap, Inc.*, 84 F.3d 797, 800-01 (6th Cir. 1996) ("if [an employee] rejects another [alternative] reasonable accommodation…that is necessary to enable the individual to perform the essential functions of the position…the individual will not be considered a qualified individual with a disability."); *see also Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 930 (6th Cir. 1999) ("[t]o show that [employee] was qualified at the time of her alleged constructive discharged, plaintiff must show that she was performing at a level which met defendant's legitimate expectations.").  Accordingly, Plaintiff cannot satisfy the second element of her claim for disability discrimination and the third element of her claim for race discrimination.

Accordingly, because Plaintiff cannot satisfy one or more of the elements for her prima facie cases of race discrimination, disability discrimination, and retaliation, her claims fails as a matter of law.

## III.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully assert that the evidentiary record establishes that Plaintiff's claims are without merit and Defendants are entitled to summary judgment as a matter of law as to all of Plaintiff's claims set forth in her Complaint.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Donald G. Slezak (0092422)
**VORYS, SATER, SEYMOUR AND PEASE LLP**
200 Public Square, Suite 1400
Cleveland, OH  44114
Telephone:  216-479-6100
Facsimile:   216-479-6060
Email:    dacampbell@vorys.com
          dgslezak@vorys.com
*Attorneys for Defendants*

15

## **STATEMENT OF ADHERENCE TO LOCAL RULE 7.1**

This Memorandum in Support adheres to the page limitations set forth in Local Rule 7.1 of the United States District Court for the Northern District of Ohio.  The present action is assigned to the standard case management track.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing *Defendants'*
*Motion for Summary Judgment and Memorandum in Support* was filed electronically on this 26th
day of December 2017.  Notice of this filing will be sent to all parties, when applicable, by
operation of the Court's electronic filing system.  Parties may access this filing through the Court's
electronic filing system.  If parties will not receive notice via the Court's electronic filing system, a
true and correct copy of the foregoing will be served via regular United States Mail, postage
prepaid, upon the following:

> Fred M. Bean, Esq.
> **THE SPITZ LAW FIRM, LLC**
> 25200 Chagrin Boulevard, Suite 200
> Beachwood, OH  44122
> Fred.Bean@SpitzLawFirm.com

> */s/ David A. Campbell*
> David A. Campbell (0066494)
> Donald G. Slezak (0092422)
> **VORYS, SATER, SEYMOUR AND PEASE LLP**